Robin CROUCH, Plaintiff,

v.

Larry WHATLEY, in his individual capacity, and the City of Dadeville, Alabama, Defendants.

No. 94–D–1551–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Sept. 22, 1995.

Allen R. Stoner, Montgomery, AL, for plaintiff.

Alex L. Holtsford, Jr., Steven A. Higgins, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is defendant City of Dadeville's motion for summary judgment filed March 20, 1995, and defendant Larry Whatley's motion for partial summary judgment filed March 20, 1995. The plaintiff responded in opposition to both motions on April 11, 1995, to which the defendant Larry Whatley replied to the plaintiff's response. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendant City of Dadeville's motion is due to be granted and that the defendant Larry Whatley's motion is due to be denied.

### JURISDICTION AND VENUE

The plaintiff alleges that the defendants abridged certain of his rights guaranteed by the United States Constitution; therefore, jurisdiction is proper under 28 U.S.C. § 1331.[1] Also pursuant to § 1331, the court may competently assert subject matter jurisdiction over the plaintiff's claim alleging violations of 42 U.S.C. § 1983. The plaintiff also alleges violations of Alabama statutory and common law. These purported violations transpired during the same transactions and occurrences as the alleged constitutional

---

1. Section 1331 provides, "[t]he [federal] district courts shall have original jurisdiction of all civil actions arising under the ... laws ... of the United States." 28 U.S.C. § 1331.

deprivations and § 1983 violations; therefore, the court may assert supplemental jurisdiction over the plaintiff's state law claims. *See* 28 U.S.C. § 1367(a).[2] Personal jurisdiction and venue are not contested.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

## FINDINGS OF FACT

In the early morning hours of October 23, 1993, plaintiff Robin Crouch (hereafter "Mr. Crouch") was the subject of a traffic stop in Dadeville, Alabama, by defendant Officer Larry Whatley (hereafter "Officer Whatley") and Officer Whatley's partner, Officer Mike Borders. Both officers were employed by the City of Dadeville Police Department.

---

**2.** Pursuant to § 1367,

... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Walter Hartley (hereafter "Mr. Hartley") also was present at the scene, as a passenger in the motor vehicle driven by Mr. Crouch. Mr. Crouch was asked by Officer Whatley to submit to a roadside sobriety test, which consisted of Mr. Crouch blowing into a hand-held alcohol sensor. After reviewing the results of the hand-held alcohol sensor, Officer Whatley decided to let Mr. Crouch leave. Subsequently, Mr. Crouch was informed that he was free to go.

The remaining facts are hotly disputed by the parties.[3] Mr. Crouch alleges that before, during, and after the roadside sobriety test, Officer Whatley's speech directed to Mr. Crouch was loud, abusive, and unprofessional. Pl.'s Ex. C–1 at 87, 89, 90 & 92; Pl.'s Ex. C–2 at 31. At the conclusion of the roadside sobriety test and in response to Officer Whatley's alleged unprofessional behavior, Mr. Crouch asked Officer Whatley why he was talking to him in such a rude way. Pl.'s Ex. C–1 at 92–94; Pl.'s Ex. C–2 at 33. Immediately after Mr. Crouch asked Officer Whatley that question and without any notification that Mr. Crouch was under arrest, Officer Whatley grabbed Mr. Crouch by the back of the pants and the back of the collar and shoved Mr. Crouch face-first into the side of Officer Whatley's patrol car. Pl.'s Ex. C–1 at 94 & 99; Pl.'s Ex. C–2 at 33–35. The right side of Mr. Crouch's face, especially in the area of the right eye, struck the side of the patrol car. Pl.'s Ex. C–1 at 97–98. Officer Whatley then opened the rear driver-side door of his patrol car and threw Mr. Crouch into the back seat. *See generally* Pl.'s Ex. C–1 at 94–102; Pl.'s Ex. C–2 at 33–35. Officer Whatley did not strike Mr. Crouch in any other way. Pl.'s Ex. C–2 at 35.

Mr. Crouch alleges that he never resisted Officer Whatley. Pl.'s Ex. C–1 at 95. He also denies ever being rude, loud or in any way disorderly as alleged by Officer Whatley. Pl.'s Ex. C–1 at 90–91; Pl.'s Ex. C–2 at 33. Further, Mr. Crouch alleges that the actions of Officer Whatley caused him to be scared

and to suffer from blurry vision in his right eye. Pl.'s Ex. C–1 at 95 & 102.

Thereafter, out of concern for Mr. Crouch, Mr. Hartley walked up to the driver's side rear door of Officer Whatley's patrol car to check on Mr. Crouch. Mr. Hartley alleges that he was not disorderly and did not interfere with any police business. Pl.'s Ex. C–2 at 36–39. Rather, he was merely talking to Mr. Crouch through the closed window of the patrol car to determine if Mr. Crouch was all right and to inform Mr. Crouch that he would notify Mr. Crouch's mother. *Id.* at 36–37. Officer Whatley then approached Mr. Hartley and asked him if Mr. Hartley saw someone hit Mr. Crouch. *Id.* at 38–39. Mr. Hartley responded that he saw Officer Whatley throw Mr. Crouch into the side of the car. *Id.* Officer Whatley then told Mr. Hartley that he was going to jail. *Id.* at 38. Subsequently, Mr. Hartley was placed in the rear seat of Officer Whatley's patrol car next to Mr. Crouch. *Id.*

Mr. Crouch and Mr. Hartley were transported by Officer Whatley to the Tallapoosa County Jail. Mr. Crouch was charged by Officer Whatley with disorderly conduct and resisting arrest. Upon being booked into the Tallapoosa County Jail, Mr. Crouch made a complaint to the booking officer of an injury to his right eye. Pl.'s Ex. C–1 at 125. Mr. Crouch and Mr. Hartley were released from the custody of the Tallapoosa County Jail sometime after 6:00 p.m. on October 23, 1993.

Mr. Crouch was convicted of disorderly conduct and resisting arrest in the Municipal Court of Dadeville, Alabama. An appeal was taken by Mr. Crouch from these two convictions to the Circuit Court of Tallapoosa County. Following a trial by jury, Mr. Crouch was acquitted by the jury of the crimes of disorderly conduct and resisting arrest.

As a result of the foregoing allegations, Mr. Crouch filed this action against Officer Whatley, in his individual capacity, and the

---

**3.** At this juncture, the court construes the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Moreover, the court's function at this point is not "to

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

City of Dadeville, Alabama. In his complaint, Mr. Crouch alleges claims under 42 U.S.C. § 1983 against Officer Whatley and the City of Dadeville. Pl.'s Compl. at ¶¶ 7–13. Specifically, Mr. Crouch contends that Officer Whatley's alleged actions constituted an unreasonable seizure in violation of the Fourth Amendment of the United States Constitution. Pl.'s Compl. at ¶¶ 7–9. Mr. Crouch also asserts that the City of Dadeville failed to sufficiently train or supervise its police officers in the use of force; or trained or supervised its police officers in the use of force in a reckless or grossly inadequate manner. Pl.'s Compl. at ¶¶ 10–13. Mr. Crouch contends that this failure to train or supervise police officers in the use of force constituted a policy of deliberate indifference on the part of the City of Dadeville. *Id.*

Finally, Mr. Crouch also asserts various state law claims against Officer Whatley and the City of Dadeville. First, Mr. Crouch asserts a claim of negligent assault and battery against Officer Whatley. Pl.'s Compl. at ¶¶ 14–16. Second, Mr. Crouch contends that Officer Whatley's alleged conduct was willful, reckless, and wanton. Pl.'s Compl. at ¶¶ 17–18. Third, Mr. Crouch asserts that Officer Whatley's alleged conduct constituted an intentional assault and battery on Mr. Crouch. Pl.'s Compl. at ¶¶ 20–22. Fourth, Mr. Crouch asserts claims of malicious prosecution and false arrest against Officer Whatley. Pl.'s Compl. at ¶¶ 23–29. Last, Mr. Crouch asserts a claim of false imprisonment against both Officer Whatley and the City of Dadeville. Pl.'s Compl. ¶¶ 30–32.

## DISCUSSION

### A. *City of Dadeville*

In its motion for summary judgment, the City of Dadeville alleges that it is entitled to summary judgment on the state claims asserted by Mr. Crouch. In support, the City of Dadeville relies on §§ 6–5–338 and 11–47–190 of the Alabama Code. The City of Dadeville also contends that it is entitled to summary judgment on Mr. Crouch's constitutional claims of inadequate training, because Mr. Crouch has failed to present substantial evi-

dence of "deliberate indifference" on the part of the city.

In Mr. Crouch's response to the motion, he concedes that the City of Dadeville is entitled to summary judgment on counts II, III, IV, V and VIII. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2–3. Since no genuine issue exists as to any material fact concerning these claims, the court will not inquire further into these claims against the City of Dadeville, and the City of Dadeville's motion for summary judgment is due to be granted.

### B. *Larry Whatley*

In his motion for summary judgment, Officer Whatley contends that he is entitled to summary judgment on the state law claims asserted by Mr. Crouch.[4] In support, Officer Whatley cites § 6–5–338(a) which states:

Every peace officer, except constables, who is employed or appointed pursuant to the constitutional statutes of this State, whether appointed or employed as such peace officer by the state [or] a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the constitutional laws of this state and authorized by the constitutional laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, including the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment or other lawful process, with violations of, the criminal laws of this state, shall at all time be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala.Code § 6–5–338(a) (1994). Therefore, this statute confers upon municipal law enforcement officers the same sovereign immu-

---

4. These state law claims include: (1) "negligent" assault and battery (Count 3); (2) willfulness, recklessness and wantonness (Count 4); (3) intentional assault and battery (Count 5); (4) malicious prosecution (Count 6); (5) false arrest (Count 7); and (6) false imprisonment (Count 8).

**1572**

nity enjoyed by State employees. Officer Whatley also relies on § 6–5–338(b) of the Alabama Code which states that § 6–5–338 "is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers."

On the other hand, Mr. Crouch contends that § 6–5–338(a) has no application in this case, because the statute did not become effective until after the claim accrued. Specifically, Mr. Crouch contends that his cause of action accrued on October 23, 1993, and the statute did not become effective until April 26, 1994. However, the court notes that the complaint in this case was not filed until December 8, 1994.

 Statutes generally operate prospectively only, in the absence of a clear statement to the contrary by the legislature. *Ex parte Burks,* 487 So.2d 905, 907 (Ala. 1985). Specifically, the Supreme Court of Alabama has stated:

In Alabama, retrospective application of a statute is generally not favored, absent an express statutory provision or clear legislative intent that the enactment apply retroactively as well as prospectively. *See Kittrell v. Benjamin,* 396 So.2d 93, 94 (Ala. 1981) (citing *City of Brewton v. White's Auto Store, Inc.,* 362 So.2d 226 (Ala.1978)). Remedial statutes, however, are not within the domain of retrospective laws, and do operate retroactively, absent clear language to the contrary. *Street v. City of Anniston,* 381 So.2d 26 (Ala.1980).

*Burks,* 487 So.2d at 907 (quoting *Jones v. Casey,* 445 So.2d 873, 875 (Ala.1983)). Section 6–5–338 contains no language which suggests that it will curtail claims which accrued before its enactment. Further, there is no asserted legislative intent that the statute so operate. Therefore, the court finds that the statute may operate retroactively only if it is found to be "remedial."

 In *Jones v. Casey,* the Supreme Court of Alabama reiterated the definition of "remedial statutes" as those "which impair no contract or vested right, and do not disturb past transactions, but preserve and enforce the right and heal defects in existing laws prescribing remedies." 445 So.2d at 875 (quoting *Dickson v. Alabama Mach. &*

*Supply Co.,* 18 Ala.App. 164, 89 So. 843, 844, *cert. denied,* 206 Ala. 698, 89 So. 922 (1921)); *see also Burks,* 487 So.2d at 907. Based on the foregoing definition, the court finds that § 6–5–338 is not remedial as it clearly impairs a substantial right by encroaching upon Mr. Crouch's vested rights on his state law claims. Therefore, the court finds that § 6–5–338 does not apply to the state law claims asserted against Officer Whatley, which accrued at the time of the accident even though the case was filed after the statute became effective. As a result, the court concludes that Officer Whatley is not immune from suit as a municipal law enforcement officer under § 6–5–338.

Officer Whatley also asserts that he is entitled to qualified immunity under Alabama law on the claims of false arrest, false imprisonment and malicious prosecution, because these decisions require personal deliberation and judgment. Mr. Crouch, on the other hand, contends that Officer Whatley's conduct was willful, malicious, illegal, fraudulent, in bad faith, beyond his authority, and/or under a mistaken interpretation of the law, and therefore, Officer Whatley is not protected by qualified immunity. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 8.

 The Supreme Court of Alabama addressed the scope of immunity available to a state officer or employee in *Phillips v. Thomas,* 555 So.2d 81 (Ala.1989). Specifically, the court stated:

Qualified or substantive immunity is available to a state officer or employee acting within the general scope of his authority, but only when certain circumstances are present. '[W]hether a particular defendant is engaged in a protected discretionary function and is thereby immune from liability for injuries he causes is a question of law to be decided by the trial court.' *Grant v. Davis,* 537 So.2d 7, 8 (Ala.1988).

555 So.2d at 84. The court in *Thomas* goes on to state that the Supreme Court of Alabama has adopted the tort liability rule for public officers found in *Restatement (Second) of Torts,* which provides as follows:

(1) Except as provided in this Section a public officer is not immune from tort liability.

(2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.

(3) *A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if*

(a) *he is immune because engaged in the exercise of a discretionary function,*

(b) he is privileged and does not exceed or abuse the privilege, or

(c) his conduct was not tortious because he was not negligent in the performance of his responsibility.

*Id.* (emphasis supplied in original) (quoting *Restatement,* § 895D, "Public Officers" (1977); *see also Barnes v. Dale,* 530 So.2d 770, 783 (Ala.1988); *DeStafney v. University of Alabama,* 413 So.2d 391, 393 (Ala.1981). In determining what is a discretionary function, the Supreme Court of Alabama has set forth certain factors which may be considered, including the following:

[1] the nature and importance of the function that the officer is performing; [2] the extent to which passing judgment on the exercise of discretion will amount necessarily to passing judgment on the conduct of a coordinate branch of government; [3] the extent to which the imposition of liability would impair the free exercise of discretion by the officer; [4] the extent to which the ultimate financial responsibility will fall on the officer; [5] the likelihood that harm will result to members of the public if the action is taken; [6] the nature and seriousness of the type of harm that may be produced; and [7] the availability to the injured party of other remedies and other forms of relief.

*Id.* (quoting *Barnes,* 530 So.2d at 784). Most importantly, the Supreme Court of Alabama has stated that qualified immunity does not protect a state officer, employee or other public official from acts that are willful, malicious, illegal, fraudulent, in bad faith, beyond his authority, or under a mistaken interpretation of law. *Phillips,* 555 So.2d at 83 & 85; *see also Lumpkin v. Cofield,* 536 So.2d 62, 65 (Ala.1988).

In this case, Mr. Crouch alleges that Officer Whatley's actions causing Mr. Crouch to be injured, incarcerated, and prosecuted were reckless, wanton, willful, malicious, fraudulent, in bad faith, illegal, or intentional. On the other hand, Officer Whatley denies he acted in the manner alleged by Mr. Crouch. However, the court again stresses that at this juncture, the court construes the evidence and factual inferences arising therefrom in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Moreover, the court's function at this point is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Therefore, in light of the foregoing standards set forth by the Supreme Court of Alabama, the court finds that sufficient evidence exists to support the allegation that Officer Whatley's conduct is not protected by qualified immunity.

Officer Whatley next contends that he is entitled to summary judgment on the claims of false arrest, false imprisonment and malicious prosecution, because there was probable cause to arrest Mr. Crouch. Def.'s Mot. for Partial Summ. J. at 10. Specifically, Officer Whatley asserts that the key to each of these claims is a lack of probable cause on the part of the arresting officer, and that such probable cause existed in this case.[5]

In his motion for summary judgment, Officer Whatley asserts facts which

---

5. Ala.Code § 6–5–170 defines false imprisonment as follows: "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." The court notes that both parties have treated false arrest synonymously with false imprisonment, and since Alabama law appears to do the same, the court will treat them synonymously. "An action for malicious prose-

cution requires the plaintiff to prove that the defendant instigated, without probable cause and with malice, prior judicial proceedings against the plaintiff, that the prior proceeding ended in favor of the plaintiff, and that the plaintiff suffered damages." *Lumpkin v. Cofield,* 536 So.2d 62, 64 (Ala.1988); *Alabama Power Co. v. Neighbors,* 402 So.2d 958, 962 (Ala.1981).

clearly lead a reasonable person to believe that Mr. Crouch was guilty of disorderly conduct and resisting arrest. However, Mr. Crouch denies acting disorderly and denies resisting arrest. Pl.'s Ex. C–1 at 90–91 & 95. Mr. Crouch's version of the facts is also corroborated by Mr. Hartley, who witnessed the entire incident. Pl.'s Ex. C–2. Specifically, Mr. Hartley contends that Mr. Crouch did not exceed the speed limit nor cross the center line. Pl.'s Ex. C–2 at 24. Mr. Hartley further denies that Mr. Crouch did anything to entice Officer Whatley's response. Pl.'s Ex. C–2 at 31 & 33. The court also notes that Mr. Crouch was acquitted of the charges in the Circuit Court of Tallapoosa County. Consequently, the court finds that there exist a genuine dispute as to whether probable cause existed to arrest Mr. Crouch.

### CONCLUSION

Mr. Crouch concedes that summary judgment should be granted in favor of the City of Dadeville on counts II, III, IV, V and VIII. On the other hand, the court concludes that Mr. Crouch has presented evidence sufficient to survive Officer Whatley's motion for partial summary judgment. While Officer Whatley has asserted reasons for his determination of probable cause, the ultimate determination of whether probable cause existed is an issue for the jury, as the court finds that a genuine issue of material fact exists.

For the foregoing reasons, it is CONSIDERED and ORDERED that defendant City of Dadeville's motion for summary judgment be and the same is hereby GRANTED. It is further CONSIDERED and ORDERED that all costs herein incurred relating to the defendant City of Dadeville's motion for summary judgment be and the same are hereby taxed against the plaintiff, for which let execution issue.

It is further CONSIDERED and ORDERED that defendant Officer Whatley's motion for summary judgment be and the same is hereby DENIED.