Billy L. WILLIAMS, Plaintiff,

v.

Paul GOLDSMITH, Jr.,
et al., Defendants.

Civ. A. No. 95–A–238–S.

United States District Court,
M.D. Alabama,
Southern Division.

Nov. 28, 1995.

---

D. Bruce McLean, Enterprise, AL, Wesley Romine, Morrow, Romine & Pearson, P.C., Montgomery, AL, for plaintiff.

Bart Gregory Harmon, Daryl L. Masters, Webb & Eley, P.C., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

ALBRITTON, District Judge.

This cause comes before the court as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The procedural events leading to the motion's submission are described below.

On February 21, 1995, plaintiff Billy L. Williams filed a complaint in this court against the following defendants who allegedly unlawfully seized his automobile: (1) Paul Goldsmith, Jr. ("Goldsmith"), an officer of the Coffee County Sheriff's Department, sued in his individual capacity, as well as his official capacity for prospective relief; (2) Brice R. Paul, formerly Sheriff of Coffee County, Alabama, sued in his individual capacity, as well as his official capacity for prospective relief; (3) Ben A. Moates, presently Sheriff of Coffee County, Alabama, sued in his official capacity for prospective relief; (4) Brian David Wilson, a Georgia resident; (5) the Coffee County Sheriff's Department; and (6) other fictional defendants.

The complaint contained eight counts. Count I sought damages and injunctive relief against the defendants pursuant to 42 U.S.C. § 1983 for alleged constitutional violations. The remaining counts asserted various state law causes of action against all defendants except defendant Moates.[1] Count II alleged the defendants converted Williams's automobile; Count III alleged deprivation of property/trespass pursuant to Ala.Code §§ 6–5–260–62 (1975) as a result of the unlawful seizure; Count IV alleged the defendants were negligent because they seized the automobile in breach of their duty to seize property only through valid process; Count V alleged the defendants were wanton and reckless in seizing the automobile; Count VI alleged defendants breached a duty to properly train deputies, making them liable for failure to supervise or train; Count VII sought relief pursuant to Ala.Code § 6–5–370 (1975), granting a private cause of action for theft; and Count VIII simply alleged that various punitive damages statutes in the Alabama Code are unconstitutional.

On April 14, 1995, defendants Goldsmith, Paul, Moates and the Coffee County Sheriff's Department (collectively referred to as "Defendants") filed their Fed.R.Civ.P. 12(b)(6) motion to dismiss. The parties have fully briefed this motion and placed it under submission before this court.

---

1. The state law claims seek only damages, not prospective relief. Therefore, according to the complaint, they are individual capacity claims that would not apply to defendant Moates, who is sued only in his official capacity.

## STANDARD OF REVIEW FOR MOTION TO DISMISS

A Fed.R.Civ.P. 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of the motion, the court will accept as true all well-pleaded factual allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Furthermore, a court may dismiss a complaint only if no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232. The court recognizes that only an "exceedingly low" threshold must be met to survive the Rule 12(b)(6) motion. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

## FACTS ALLEGED

The complaint alleges that defendant Wilson conveyed an automobile to Williams, who became the automobile's owner. (Compl. ¶ 10.) Subsequently, defendant Paul, the Sheriff of Coffee County, authorized defendant Goldsmith, a Coffee County sheriff's deputy, to seize the automobile for Wilson, even though no court process authorized the seizure. (Compl. ¶ 12.) Deputy Goldsmith accompanied Wilson to Williams's home, where Goldsmith demanded that possession of the automobile be handed over to Wilson. (Compl. ¶ 11.) Williams protested that he owned the vehicle and produced the official title to prove ownership, yet Goldsmith, without any court order, using his authority as a law enforcement officer, compelled Williams to hand over the automobile to Wilson. *Id.* During the actual seizure, Sheriff Paul contacted deputy Goldsmith to inquire if assistance was needed in taking the automobile. (Compl. ¶ 12.) All of this occurred in part because Sheriff Paul failed to supervise, instruct or train deputy Goldsmith in the duties of a sheriff's deputy. (Compl. ¶ 52.)

## DISCUSSION

The court will first consider the § 1983 claims and then consider Defendants' argument that sovereign immunity bars the state law claims against defendants Paul and Goldsmith.

### SECTION 1983 CLAIMS

Williams seeks relief against the Defendants pursuant to 42 U.S.C. § 1983 by arguing that Defendants seized his automobile in violation of the Constitution of the United States. The complaint fails to specify the exact constitutional underpinnings of the § 1983 claims, alleging only that Williams's "due process, equal protection, privileges, immunities and other constitutional rights" were violated. (Compl. ¶ 21.) Nevertheless, in opposing the motion to dismiss, Williams holds out two discrete constitutional pillars supporting his § 1983 claims: the Fourth Amendment's prohibition against unlawful seizure of property, and the Fourteenth Amendment's substantive [2] due process prohibition against arbitrary government action.[3] (Mem.Opp'n Defs.' Mot.Dismiss at 3–6).

Defendants respond that the Coffee County Sheriff's Department is not a suable entity. (Br.Supp.Defs.' Mot.Dismiss at 1.) Furthermore, Defendants refuse to address any Fourth Amendment claims in their motion to dismiss, arguing that Williams fails to plead such claims when the complaint does not mention the Fourth Amendment. (Reply Pl.'s Opp'n Defs.' Mot.Dismiss at 2.) As for the substantive due process claims, Defendants assert that Williams's allegations fall outside the relatively limited application of substantive due process, *Id.,* and even if a claim is stated, Defendants are entitled to qualified immunity. *Id.* at 2–3. Finally, Defendants assert that Williams cannot obtain

---

2. Williams insists that "this case does not involve a procedural due process claim." (Mem.Opp'n Defs.' Mot.Dismiss at 5.)

3. Williams also asserts in the caption of a section of his brief, without subsequent argument, violations of both the Equal Protection Clause and the Privileges and Immunities Clause of the Four-

teenth Amendment. (Pl.'s Supl.Mem.Opp'n Defs.' Mot.Dismiss at 2.) The complaint alleges neither a discriminatory motive by Defendants, nor that Defendants denied Williams a privilege or immunity of national citizenship. Therefore, § 1983 claims resting on these constitutional provisions will be dismissed.

injunctive relief when he fails to state a claim for a constitutional violation. *Id.* at 4.

As explained below, the court finds that the complaint meets the pleading requirements necessary for Williams to pursue a Fourth Amendment theory of recovery without amending the complaint. Furthermore, the complaint fails to state a claim for a substantive due process violation. Finally, in light of the Defendants' refusal to address the Fourth Amendment claims, the court will not dismiss the § 1983 claims for injunctive relief.

### 1. Suit Against the Coffee County Sheriff's Department

■ Defendants correctly assert that the Coffee County Sheriff's Department is not a suable entity. *See Dean v. Barber,* 951 F.2d 1210, 1214–15 (11th Cir.1992). The "capacity to sue or be sued shall be determined by the law of the state in which the district court is held . . . ." Fed.R.Civ.P. 17(b). Under Alabama law, a county sheriff's department lacks the capacity to be sued. *White v. Birchfield,* 582 So.2d 1085, 1087 (Ala.1991). Therefore, the court will dismiss all claims against the Coffee County Sheriff's Department.

### 2. The Fourth Amendment Claims

■ Defendants argue that the complaint must mention the Fourth Amendment by name to plead a claim based on the Fourth Amendment. The rules of pleading require no such specificity: "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests. Fed.R.Civ.P. 8(a)." *Sams v. United Food & Commercial Workers International Union, AFL–CIO, CLC,* 866 F.2d 1380, 1384 (11th Cir.1989). The complaint clearly recounts the facts underlying Williams's Fourth Amendment claim and specifies that his "constitutional rights" were violated. (Compl. ¶¶ 16–24.) This more than

meets the pleading requirements outlined above. Therefore, the court finds that Williams, without amending the complaint, may proceed in this litigation by asserting and proving that the seizure of his automobile violated the Fourth Amendment.[4]

### 3. The Substantive Due Process Claims

■ Williams argues that the "arbitrary, wrongful" government seizure of his property violated his substantive due process rights. (Pl.'s Suppl.Mem.Opp'n Defs.' Mot.Dismiss at 3.) It is true that substantive due process protects property owners from arbitrary, irrational government infringement of their property interests. *See Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1379 (11th Cir.1994). However, substantive due process protects against arbitrary legislative action, not arbitrary executive action. *McKinney v. Pate,* 20 F.3d 1550, 1557 n. 9, 1558 n. 14 (11th Cir.1994). Thus, Defendants violated Williams's substantive due process rights only if their actions can be characterized as "legislative" conduct.

■ The Eleventh Circuit described the distinction between "legislative" and "executive" government action in *McKinney:* "Executive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch. . . . Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples." *Id.* at 1557 n. 9. The alleged governmental activities in this case are wholly executive action not protected by substantive due process; therefore, the court will dismiss the § 1983 claims alleging a violation of substantive due process.

### 4. Claims for Injunctive Relief

■ Defendants argue that Williams cannot obtain injunctive relief because he fails to

---

4. The court does not construe Defendants' motion to dismiss to address the Fourth Amendment claim. Instead, the Defendants appear to argue that such a claim was not even pleaded, never existed, and need not be dismissed. The court today simply clarifies that the complaint encompasses a claim cognizable under a Fourth Amendment theory of recovery and proceeds no further.

state a claim based upon a constitutional violation. (Defs.' Mot.Dismiss at 1.) However, Defendants have refused to test the legal sufficiency of the alleged facts in the context of a Fourth Amendment claim, choosing instead to argue that such a claim was not properly pleaded. The court rejected this argument, and the Fourth Amendment claim stands. Therefore, Defendants' argument against the award of injunctive relief fails. The motion to dismiss the § 1983 claim for injunctive relief will be denied.

### STATE LAW CLAIMS

Defendants assert that sovereign immunity bars the state law claims against Sheriff Paul and deputy Goldsmith. According to the Defendants, Alabama sovereign immunity protects sheriffs and their deputies from individual capacity suits arising out of "on duty" activity. (Br.Supp.Defs.' Mot.Dismiss at 9.) Defendants argue that paragraph nine of the complaint, alleging the Defendants acted "within the line and scope of their agency, service or employment," establishes their "on duty" status during the events in question, entitling them to sovereign immunity. *Id.*

Defendants overstate the legal effect of the allegation in paragraph nine of the complaint, and they also overstate the protection afforded Alabama sheriffs by sovereign immunity. Paragraph nine alleges that each defendant acted individually or through an agent. The allegation of acting within authority refers to actions of an agent of a defendant, so as to make the defendant liable for the agent's acts, not to actions of the defendants individually. The authority issue as to individual defendants is central to the determination of whether Paul and Goldsmith are entitled to sovereign immunity: Alabama sovereign immunity provides no protection to sheriffs and deputies who act outside the authority of their office, even if they do so while "on duty." The court cannot conclude, based solely on the complaint's allegations, that Paul and Goldsmith acted within their authority by seizing Williams's automobile; therefore, the court will not dismiss the state law claims relating to the unlawful seizure without further factual development. Conversely, deputy training falls well within the discretionary authority of a sheriff, and thus Sheriff Paul cannot be sued individually because of deficiencies in such training.

1. *State Law Claims Relating to the Seizure of the Automobile.*

■ The Supreme Court of Alabama holds that sovereign immunity provides no protection for a state officer or employee who "acts ... beyond his authority...." *Phillips v. Thomas,* 555 So.2d 81, 83 (Ala.1989). The rule is more easily stated than applied. The facts of *Hereford v. Jefferson County,* 586 So.2d 209 (Ala.1991), provide an example of the difficulty encountered in applying the rule. In *Hereford,* sheriff's deputies mistakenly released the wrong prisoner, more dangerous than the prisoner authorized to be released, with the result that plaintiffs were robbed. 586 So.2d 209. Even though the deputies acted outside their authority in releasing the prisoner, sovereign immunity barred suit against them. *Id.* at 210. Another, more common example of a public officer exceeding authority, yet remaining immune from suit on sovereign immunity grounds, is the police officer who makes an arrest later held to be illegal for lack of probable cause. Surely not every police officer making a good faith error regarding probable cause can be sued, yet each time police officers arrest without probable cause they exceed their authority.

■ The tort liability rule for public officers found in the Restatement (Second) of Torts, adopted into Alabama sovereign immunity law by the Supreme Court of Alabama, *Phillips,* 555 So.2d at 84, provides a useful comment explaining the interplay between an official's authority and sovereign immunity:

> An immunity protects an officer only to the extent that he is acting in the general scope of his official authority. When he goes entirely beyond it and does an act that is not permitted at all by that duty, he is not acting in his capacity as a public officer or employee and he has no more immunity than a private citizen. It is as if a police officer of one state makes an arrest in another state where he has no authority.

The determination is not, however, solely one of the factual existence of power, authority or jurisdiction. In many cases an officer is under a duty to make a preliminary determination of whether he has the authority or jurisdiction. When he exercises discretion in making that decision and takes action pursuant to it, he is performing his official duty and will still be protected by the immunity for discretionary conduct, even though his decision is erroneous. Thus a court may have jurisdiction only over defendants who have been properly served with process; but the judge may be required to decide, in the first instance, whether there has been proper service. When he decides that there has been and proceeds to try the case, he is performing his official duty and is immune from liability in tort, even though he is in error, there has been no proper service and he has, in fact, had no jurisdiction to proceed. It is sometimes said that the officer is immune for acts that are merely "in excess of" his authority, as distinguished from those beyond the "outer perimeter of his line of duty."

Restatement (Second) of Torts § 895D cmt. g (1977). Thus, for purposes of sovereign immunity, state officials act within their scope of authority by engaging in conduct that is initially authorized, but later progresses, through good faith error in judgment, to a point exceeding their authority. On the other hand, when officials engage in conduct that, from its very inception, exceeds their authority, they act outside the scope of their authority for sovereign immunity purposes.

■ The rule makes no "on duty" exception for acts outside an officer's authority. Indeed, Alabama has long held a sheriff individually accountable for levying on property in an unauthorized manner, regardless of any "on-duty" or official status: "The sheriff cannot make a valid levy on real or personal property, or by garnishment, without having in his possession the attachment authorizing it. His power and duty arise when the attachment is placed in his hands. Until then he has no authority to act, and becomes a trespasser if he seizes the property of the defendant." *Donald v. Nelson,* 95 Ala. 111, 10 So. 317, 318 (1891).

■ Furthermore, if sovereign immunity fully precluded individual liability of sheriffs for their official, "on-duty" acts, legislative grants of immunity relating to a sheriff's official duties would be redundant and unnecessary. Yet, the Alabama Legislature finds necessary a statutory grant of immunity to sheriffs who execute process regular on its face that is issued by competent authority. Ala.Code § 36-22-7 (1975). Execution of process is clearly an "on duty" or official activity.

■ Finally, Defendants fail to cite cases holding that a sheriff or sheriff's deputy, who acts outside his or her authority for purposes of sovereign immunity, nevertheless obtains the protection of sovereign immunity because of "on-duty" status. The cases cited by Defendants all involve sheriffs performing acts within their authority: *Alexander v. Hatfield,* 652 So.2d 1142 (Ala.1994), involved a deputy sheriff serving process; *King v. Colbert County,* 620 So.2d 623 (Ala.1993), *Hereford v. Jefferson County,* 586 So.2d 209 (Ala. 1991), and *Parker v. Amerson,* 519 So.2d 442 (Ala.1987), all involved a sheriff exercising authority over the jail; *White v. Birchfield,* 582 So.2d 1085 (Ala.1991), involved a deputy sheriff's conduct while responding to an emergency. Each of these activities fall within the scope of a sheriff's authority. Thus, these cases fail to support the general proposition that sovereign immunity protects sheriffs from individual liability arising out of "on-duty" activities. Sovereign immunity fails to protect defendants Paul and Goldsmith if they engaged in unauthorized conduct, regardless of their "on-duty" status.

■ The court finds no source of authority allowing Paul and Goldsmith, in the alleged circumstances, to seize Williams's automobile. Although police officers often seize property without prior judicial approval under prescribed circumstances in the criminal context, the same is not true in the purely civil context. The *Donald* case long ago established that sheriffs engaging in purely civil seizures must first obtain a writ or other form of judicial approval of their action. Furthermore, Ala.R.Civ.P. 64 re-

quires judicial review before a pre-judgment seizure without notice can occur. Thus, no authority establishes that a sheriff may, without prior judicial approval, adjudicate a property dispute between two citizens, then seize property in favor of the prevailing party. The complaint alleges that defendant Wilson possessed no interest of any kind, not even a creditor's interest, in the automobile.[5] Even so, Paul and Goldsmith allegedly seized the automobile and gave it to Wilson. In the absence of further factual development, the court cannot find that Paul and Goldsmith undertook a course of conduct that, although initially authorized, later progressed beyond their authority through good faith error in judgment. Therefore, the motion to dismiss, on the basis of sovereign immunity, counts II, III, IV, V and VII, consisting of state law claims arising out of the alleged unlawful seizure, will be denied.[6]

### 2. *State Law Claims Relating to the Training of Deputies.*

███ Count VI of the complaint alleges that defendant Paul "negligently, recklessly and/or wantonly failed to supervise, instruct or train Defendant Goldsmith in his duties as a Deputy Sheriff." (Compl. ¶ 52.) Sovereign immunity includes a qualified immunity available to state officers acting within the general scope of their authority who perform discretionary functions. *Phillips,* 555 So.2d at 85. State officials responsible for training other employees are entitled to qualified (or substantive) immunity from suits arising out of training activities. *Id.* Defendant Paul, as Sheriff of Coffee County, possessed the authority to train his deputies, and the exercise of this authority was a discretionary function, entitling him to sovereign immunity from this claim. Therefore, Count VI, the

claim against Sheriff Paul for failure to train deputy Goldsmith, will be dismissed.

### CONCLUSION

For the reasons explained in this Memorandum Opinion, it is hereby ORDERED as follows:

1. The motion to dismiss the claims brought pursuant to 42 U.S.C. § 1983, resting upon alleged violations of the Equal Protection Clause and Privileges and Immunities Clause of the Fourteenth Amendment to the Constitution of the United States, is GRANTED.

2. The motion to dismiss all claims against the Coffee County Sheriff's Department is GRANTED.

3. The motion to dismiss the claims brought pursuant to 42 U.S.C. § 1983, resting upon the alleged violation of the substantive due process component of the Fourteenth Amendment to the Constitution of the United States, is GRANTED.

4. The motion to dismiss the claim brought pursuant to 42 U.S.C. § 1983 resting upon the alleged violation of the Fourth Amendment prohibition against unlawful seizure of property is DENIED.

5. The motion to dismiss the claims brought pursuant to 42 U.S.C. § 1983 for injunctive relief is DENIED.

6. The motion to dismiss the claims found in counts II, III, IV, V, and VII on the basis of sovereign immunity is DENIED.

7. The motion to dismiss Count VI against defendant Paul is GRANTED.

---

**5.** Further factual development might lead the court to conclude that Wilson possessed some interest in the automobile, such as a creditor's interest, and requested the presence of law enforcement to keep the peace while he attempted to exercise his self-help remedy. Sheriffs have a duty to keep the peace and prevent assaults. Ala.Code § 15–6–1 (1975). If deputy Goldsmith accompanied Wilson for this purpose, then exceeded his authority through error in judgment while attempting to resolve the dispute peaceably, a closer sovereign immunity question is

presented. Based on the complaint's allegations, that question is not before the court.

**6.** In addition, counts II, III, V and VII contain allegations that Defendants acted either wilfully or maliciously toward Williams, which if true renders the sovereign immunity defense unavailable to Defendants. *See Phillips,* 555 So.2d at 83. These allegations provide additional reasons for refusing to dismiss these counts on sovereign immunity grounds.

1004

8. The Defendants are given 10 days from the date of this order to file their answer.