This is a breach of contract case brought by John T. Colagross against Shoals Community College (Shoals) and Dr. Larry McCoy. For clarity purposes, the facts pertinent to this appeal are set out first.
The convoluted record in this case reflects that Shoals was created by the State Board of Education on January 26, 1989, by consolidating Muscle Shoals State Technical College (MSSTC) and the Tuscumbia campus of Northwest Alabama State Junior College (NASJC). That same day, Northwest Alabama Community College (NACC) was formed by consolidating the Phil Campbell campus of NASJC and Northwest Alabama State Technical College. NACC had campuses in both Phil Campbell and Hamilton, Alabama.
On September 9, 1993, the State Board of Education combined Shoals and the Phil Campbell campus of NACC to form Northwest Shoals Community College (Northwest Shoals). From January 26, 1989, to September 1993, Shoals was a post-secondary educational institution operating under the authority and supervision of the State Board of Education. McCoy was president of Shoals from January 1989 to September 1993; upon the formation of Northwest Shoals in September 1993, McCoy became president of Northwest Shoals.
On April 9, 1991, NACC sent a letter to Colagross notifying him that his employment contract would not be renewed because of what NACC considered to be a justifiable decrease in jobs at the college caused by a 3.72% proration in funding that had been imposed, and that his effective date of termination would be June 7, 1991. NACC also informed Colagross of his rights to a hearing pursuant to the "Revised Hearing Procedure." On April 12, 1991, Colagross informed NACC that he intended to contest his proposed termination. In an attempt to settle this employment dispute, NACC sent a letter to Colagross on June 5, 1991, offering him a "contract for 50% employment conditioned upon sufficient student enrollment to cover [his salary]." The letter instructed Colagross to sign the letter in order to accept the offer and told him that if the offer was rejected, then a Fair Dismissal Panel would be immediately appointed. Colagross accepted NACC's offer and continued to work for NACC from June 1991 until September 1993, when his employment was again terminated[1].
On May 29, 1992, while employed by NACC, Colagross filed a "Petition for Writ of Mandamus or in the alternative Complaint for Declaratory or Injunctive Relief and Damages" against Shoals and McCoy (in his official capacity and individually), in the Colbert County Circuit Court. Colagross alleged that he had been a tenured employee of NASJC before it was consolidated with MSSTC to form Shoals, and that after the consolidation he was entitled to, but was denied, full-time employment at Shoals. Colagross requested a declaration that he was entitled to full-time employment; damages for breach of contract, including back pay; other compensatory damages; punitive damages; and attorney fees. On July 6, 1992, Shoals and McCoy filed a joint answer, denying the material allegations of the complaint and asserting affirmative defenses, including sovereign immunity.
The case was set for trial on April 19, 1993. On April 16, 1993, Colagross, Shoals, and *Page 1313 
McCoy filed a joint motion for a continuance, stating that the parties were engaged in "good faith settlement negotiations and [were] lacking only a few minor details before a settlement amicable to all parties [could] be reached." That same day, the trial court granted the joint motion and ordered the parties to notify the trial court, in writing, within 30 days as to the status of the case. It appears from the record that neither party notified the trial court within the 30 days regarding the status of the case.
On September 20, 1993, Colagross filed a "motion to enforce settlement agreement," alleging that a "settlement agreement" had been reached, that a draft of the "settlement agreement" had been forwarded to his attorney, and that that draft had been executed by the attorney for Shoals and McCoy. Attached to Colagross's motion were the various drafts of the "settlement agreement." The trial court scheduled a hearing on Colagross's motion for October 19, 1993, but there is no indication in the record that a hearing was held. On November 8, 1993, Shoals and McCoy filed a letter, requesting the trial court to put the case back on the active docket because the parties had been unable to reach a settlement. On March 22, 1994, Colagross filed a "supplemental motion to enforce settlement," and a motion for leave to amend his complaint. Colagross also filed an amended complaint, seeking monetary damages for mental anguish, and declaratory relief requiring his reinstatement to Northwest Shoals. Shoals and McCoy filed a joint motion to dismiss on April 12, 1994, asserting that McCoy, in his official capacity and individually, was entitled to sovereign immunity and that Shoals was entitled to sovereign immunity.
On December 5, 1994, following oral argument, the trial court entered an order granting Colagross's "motion to enforce settlement agreement" reached between the parties in May 1993. On December 15, 1994, Shoals and McCoy filed a Rule 59, Ala.R.Civ.P., motion, arguing that their motion to dismiss was pending before the court, that that motion was due to be granted on the basis of sovereign immunity, that the question of immunity was dispositive, and that the purported "settlement agreement" was not final, because it had not been signed, as required, by the attorney general. The trial court denied that motion on February 27, 1995. Shoals and McCoy appeal.
On appeal Shoals and McCoy argue: (1) that the trial court lacked subject matter jurisdiction because, they say, the claims against them were barred by the doctrine of sovereign immunity; (2) that the trial court erred in ordering Shoals and McCoy to adhere to a "settlement agreement" to which, they say, neither was a party; (3) that the trial court erred by enforcing the "settlement agreement" because, they argue, a condition precedent, the approval of Alabama's attorney general, had not been satisfied; and (4) that the trial court erred by enforcing a "settlement agreement" that, they say, did not satisfy the contractual elements of an offer and an acceptance.
We note at the outset that no presumption of correctness attaches to the trial court's judgment denying Shoals and McCoy's motion to dismiss, because no oral testimony was taken in this case. Phillips v. Knight, 559 So.2d 564 (Ala. 1990).
We first address whether the trial court lacked subject matter jurisdiction over the claims against Shoals and McCoy. Article 1, § 14, Alabama Constitution of 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." In Williams v. John C. CalhounCommunity College, 646 So.2d 1 (Ala. 1994), our supreme court stated:
 "Under Article 1, § 14, Alabama Constitution of 1901, 'the State and its agencies have absolute immunity from suit in any court.' Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989); see also Taylor v. Troy State University, 437 So.2d 472, 474
(Ala. 1983). 'This immunity extends to the state's institutions of higher learning.' Taylor, 437 So.2d at 474; see Breazeale v. Board of Trustees of the University of South Alabama, 575 So.2d 1126, 1128
(Ala.Civ.App. 1991). 'State officers and employees, in their official capacities and individually, are also absolutely immune from suit when the action is, in effect, one against *Page 1314 
the state.' Phillips v. Thomas, 555 So.2d at 83; see Taylor v. Troy State University, 437 So.2d at 474. Those dealing with the State are charged with knowledge of its immunity."
646 So.2d at 2. It is undisputed that Shoals was a post-secondary educational institution operating under the authority and supervision of the State Board of Education. Therefore, it is clear that Shoals is entitled to absolute immunity from suit. Accordingly, the action against Shoals is barred by sovereign immunity.
Employees of state agencies, in their official capacities and individually, are also entitled to absolute immunity from suit when the action is, in effect, one against the state.Williams, supra. An action is one against the state when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiffs recovery of money from the state. Turner v. Sayers,575 So.2d 1135 (Ala.Civ.App. 1991). Colagross requested a declaration that he was entitled to a contract for full-time employment; damages for breach of contract, including back pay; other compensatory damages; punitive damages; and attorney fees.[2] Clearly, a favorable result for Colagross would result in his recovery of money from the state; consequently, the claims against McCoy constitute an action against the state and are barred by sovereign immunity. Accordingly, McCoy, in his official capacity and individually, is entitled to absolute immunity from suit, and the action against him is barred by sovereign immunity.
Colagross argues that an exception to sovereign immunity applies in this case because, he says, McCoy acted fraudulently, in bad faith, and beyond his authority. A state official is not entitled to immunity in an action alleging that the official acted fraudulently, in bad faith, or beyond his or her authority, because such an action is exempt from the sovereign immunity defense. Pack v. Blankenship, 612 So.2d 399
(Ala. 1992). However, nothing in Colagross's complaint or amended complaint alleges that McCoy acted fraudulently, in bad faith, or beyond his authority. Therefore, this exception to the doctrine of sovereign immunity is not available in this case.
When Art. 1, § 14, Alabama Constitution of 1901, has been violated, a trial court is without jurisdiction to entertain the action and the action must be dismissed. Hillyer v. CentralReview Bd. for Dept. of Social Services, 384 So.2d 1117
(Ala.Civ.App. 1980). Consequently, because the trial court lacked subject matter jurisdiction, the trial court erred in denying Shoals and McCoy's joint motion to dismiss.
While the preceding holding is dispositive, we take this opportunity to comment on the "settlement agreement" enforced by the trial court. First, we note that the drafts of the purported "settlement agreement" contained in the record specifically state that "[t]his settlement agreement is entered into . . . between, and among John T. Colagross andNorthwest Alabama Community College." Additionally, the document that appears to be the final draft contains a provision indicating that Colagross "intended to soon file a motion with the Circuit Court of Colbert County to add [NACC] and Charles Britnell as . . . defendants to the case." However, NACC and Britnell were never added as defendants. Furthermore, that draft provided that Colagross's damages would be paid by NACC and that Colagross would be employed by NACC. None of the drafts is dated except for the year 1993, and, as noted above, Shoals and NACC merged in September 1993 to form Northwest Shoals.
Second, we note that none of the drafts of the "settlement agreement" is free from changes, none has been signed by Colagross, and the one draft actually signed by an attorney designates that he signed it as "Attorney for Northwest Alabama Community College." Shoals and McCoy are not included in that signed "settlement agreement." Section 34-3-21, Ala. Code 1975, provides that an attorney has authority to bind his client, in any *Page 1315 
action or proceeding, by any agreement in relation to such case, made in writing; in this case, the attorney was acting on behalf of NACC, a nonparty, not Shoals and McCoy.
Third, we note that all of the drafts of the "settlement agreement" contain a specific provision stating that the agreement is "subject to the approval of Attorney General James Evans." However, the record is devoid of any evidence that Attorney General Evans approved the agreement.
Based on the foregoing reasons, it appears that there was no valid "settlement agreement" for the trial court to enforce.
We hold that the trial court erred in denying Shoals and McCoy's motion to dismiss. The judgment of the trial court is hereby reversed, and the cause is remanded for the entry of an order dismissing the action on the grounds of sovereign immunity.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, MONROE, and CRAWLEY, JJ., concur.
THIPGEN, J., concurs in the result.
[1] We note that while the record is devoid of the following documents, it appears from correspondence between the attorneys and the trial court that on September 13, 1993, after the consolidation of Shoals and NACC, McCoy gave Colagross a letter informing Colagross that his employment with NACC was terminated effective September 28, 1993. It also appears that Colagross contested his termination and that, pursuant to the "Revised Hearing Procedure," a hearing before the Employee Review Panel was requested. On May 16, 1994, Colagross filed a motion requesting the trial court to enjoin the hearing before the Employee Review Panel, and, while the court never ruled on this motion, it appears from the record that the hearing has been postponed until the completion of this action.
[2] Additionally, we note that § 16-24-10(c), Ala. Code 1975, states that "no action shall lie for the recovery of damages for the breach of any employment contract of a teacher in the public schools."