[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1274 
Kevin Matthews appeals from a summary judgment in favor of the defendants, Alabama Agricultural Mechanical University ("A M"); Dr. David B. Henson, individually and in his capacity as president of A M; the A M Board of Trustees; and 11 persons in their capacities as members of the Board of Trustees.
Matthews graduated from A M in 1990 and was hired as a part-time layout artist for A M's space program. In 1992, Dr. James R. Dawson, associate dean for extension services and the administrator of the cooperative extension program, offered Matthews a job handling audiovisual equipment for the extension program. Matthews accepted the job and resigned from his part-time position as a layout artist. He began work on February 9, 1993, and was given a copy of the A M staff handbook. *Page 1275 
On September 20, 1993, Matthews was notified by his supervisor that his position had been eliminated because of a reorganization of the cooperative extension program. He was told that inadequate funding necessitated a reduction in force and that his contract therefore would not be renewed. Ten days later, Matthews filed a grievance and requested a hearing under procedures set out in the A M staff handbook.
The staff handbook provides that before an employee may be terminated because of a reorganization or a reduction in force (1) the termination must be pursuant to a plan that has been approved by a department head, the director of personnel, the vice-president of administration, and the president of the university; (2) the department head must make a list, in order of priority, of those employees whose terminations would have the least adverse effect on the department; (3) the employee must be given 30-days' notice of his or her termination; and (4) the university must make a good faith effort to place the employee in another suitable position, and if the employee cannot be immediately placed, the employee must be given the right of first refusal of the next vacancy for which he or she is qualified.
On December 14, 1993, the grievance committee held a hearing. At the hearing, the university's personnel director presented the committee with a plan for the reorganization of the cooperative extension program, which eliminated Matthews's position. The reorganization plan was dated November 22, 1993, two months after Matthews had received notice of his termination, and it contained only one approving signature.
After the hearing, the grievance committee sent its written findings to Dr. David B. Henson, president of A M. The committee found that Matthews's termination was not justified under the "reorganization" or "reduction in force" rationales because the university had not followed the procedures outlined in the staff handbook, namely: the reorganization plan for the extension program had not been approved before Matthews was dismissed; Matthews had not been given adequate notice of his termination; and the university had made no effort to place Matthews in another suitable position before terminating him. The grievance committee recommended that Matthews be reinstated to his position.
In January 1994, Dr. Henson rejected the grievance committee's recommendation and upheld Matthews's dismissal. Henson determined that Matthews was a contract employee, that his contract had expired on September 30, 1993, and that his contract had not been renewed for the following year. Dr. Henson determined that the grievance committee had misapplied the provisions of the staff handbook relating to "reorganizations" and "reductions in force" because those sections, he thought, applied only to an employee who was dismissed before the end of his contract.
In August 1994, Matthews sued the defendants in state court, alleging that A M had breached a contract of employment with him, had denied him the due process of law guaranteed by the federal and state constitutions, and had violated his rights under 42 U.S.C. § 1983. The defendants removed the action to the United States District Court for the Northern District of Alabama. In December 1994, the district court dismissed the federal claims and remanded the state claims to the Madison Circuit Court.
Matthews amended his complaint three times: first, to add a petition for writ of mandamus or, in the alternative, certiorari; second, to substitute Dr. Gaines Smith and the Alabama Cooperative Extension System for two fictitiously named defendants; and third, to add a claim against the substituted defendants.
A M, President Henson, the Board of Trustees, and the named trustees moved for a summary judgment. Smith and the Extension System moved to strike the second and third amendments to the complaint. The circuit court struck the second and third amendments and entered summary judgments on all claims in favor of the remaining defendants. Matthews appealed to the Alabama Supreme Court. The supreme court transferred the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
 The Breach of Contract Claim
Matthews contends that a contract was formed and the terms and conditions of his employment were established by the job offer *Page 1276 
made to him by Dr. James R. Dawson and by the provisions of the A M staff handbook. He argues that, based on those terms and conditions, he was entitled to continuing employment and could be terminated only for cause.
A M argues that Matthews was employed on a fiscal-year basis only, and that his employment was subject to renewal at the end of the year. It contends that Matthews had no property interest in continued employment beyond the end of the fiscal year and that, when it notified Matthews that his contract would not be renewed, it neither breached its contract with Matthews nor denied him due process of law.
The trial court held that Matthews had a contract that provided he would be employed only to the end of the fiscal year, that Matthews had no property interest in continued employment beyond the end of the fiscal year, and that Matthews, therefore, was not denied any due process rights when his contract was not renewed. Compare Stovall v. HuntsvilleCity Board of Educ., 602 So.2d 407, 409 (Ala.Civ.App. 1992) (staff member serving under a one-year contract "had an expectancy of one-year's employment"); Williams v. John C.Calhoun Community College, 646 So.2d 1, 3 (Ala. 1994) (community college site supervisor had no property interest in employment beyond one year because his contract was, by its terms, effective for only a one-year period).
The evidence at trial indicated the following. Dr. James R. Dawson interviewed Matthews and hired him as an audiovisual media equipment extension building assistant. Dawson testified that before he hired Matthews he submitted a "Personnel Requisition Form" required to fill the position. The form indicates that the job had a "start date" of "01/04/93," and a "stop date" of "99/99/99."
Dr. Dawson testified that he offered Matthews "permanent" employment. He stated that, by "permanent," he meant employment that was full-time and ongoing — not employment for only a 12-month period. After Dawson hired Matthews, Matthews was put on the payroll by means of a "Personnel Action Form." That form indicates that Matthews was a "permanent" employee with a job "start date" of "2/09/93" and a "stop date" of "9/30/93." Dawson stated that he did not know what the "stop date" of "9/30/93" on the Personnel Action Form meant. He also said that he had never heard of a permanent employee serving on a year-to-year basis. He thought the university had to have cause to discharge a permanent employee.
Dr. James W. Shuford, who became dean of the cooperative extension program after Dr. Dawson retired, decided to terminate Matthews. Dr. Shuford testified that regular full-time staff members at A M are employed pursuant to a 12-month contract and that Matthews was, therefore, a temporary employee because he was hired for less than 9 months. He did not know why Matthews's Personnel Action Form indicated that he was a "permanent" employee. Shuford stated that the cooperative extension program was not undergoing a reorganization or a reduction in force in the fall of 1993.
Lois Thompson, the director of human resources at A M, testified that all university staff members are employed on a year-to-year basis. She said that a "permanent" employee receives a continuing employment form every year indicating that he or she is employed for the fiscal year, from October 1 of one year through September 30 of the following year.
Dr. David B. Henson, the president of A M, testified that all staff contracts at A M extend to the end of the fiscal year, and that the university, in its sole discretion, elects to renew each contract at the end of that period.
Matthews did not sign a written contract. Neither the "Personnel Requisition Form" nor the "Personnel Action Form" that Dr. Dawson submitted to the university personnel department constitutes a contract of employment; Matthews did not see those forms or assent to their terms before being hired. Compare Davis v. University of Montevallo, 638 So.2d 754
(Ala. 1994) (terms and conditions of university staff member's employment were established by a written one-year contract embodied in an "Official Appointment Form" signed by the staff member at the time of employment). The forms Dr. Dawson submitted may, however, shed light on what type of employment the university intended when it hired Matthews. *Page 1277 
Matthews argues that the trial court erred by entering a summary judgment for A M on the contract claim because, he contends, he presented substantial evidence showing that there were genuine issues concerning the following material facts: (1) whether Dr. Dawson offered him "permanent" employment, and (2) whether the staff handbook constituted an offer of ongoing employment that could be terminated only for cause.
In Alabama, "permanent" employment is
 "so long as [the employer is] engaged in the same nature of business and need[s] the services of [the] employee, and [the employee is] able and willing to do it satisfactorily and [gives] no cause for his discharge."
Alabama Mills v. Smith, 237 Ala. 296, 299, 186 So. 699, 701
(1939).[1] The test for whether an offer of employment is permanent was set out in Green v. City of Hamilton, HousingAuthority, 937 F.2d 1561, 1564 (11th Cir. 1991):
 "Although Alabama courts consider employment 'at will' to be the norm, they will recognize and enforce contracts for 'permanent' employment . . . under certain circumstances. See, e.g., Hoffman-La Roche[, Inc.] v. Campbell, 512 So.2d 725, 728
(Ala. 1987); Scott v. Lane, 409 So.2d 791
(Ala. 1982). An employment relationship is 'permanent,' and thus not terminable 'at will,' if: (1) there was a clear and unequivocal offer of 'permanent' employment, (2) the employee provided some substantial consideration for the contract apart from the services to be rendered, and (3) the individual making the offer had authority to bind the employer. See Hoffman-La Roche, 512 So.2d at 728.
Dr. Dawson testified that he told Matthews when he offered him the position that the job was "permanent." "An offer expressly stating that employment is 'permanent' is sufficiently clear and unequivocal to meet this requirement under Alabama law. See Schneider v. Russell Corp.,823 F.2d 422, 425 (11th Cir. 1987); Bates v. Jim Walter Resources, Inc.,418 So.2d 903, 906 (Ala. 1982); Alabama Mills, 186 So. at 702."Green v. City of Hamilton, Housing Authority, 937 F.2d at 1564.
Matthews resigned his former position to take the job offered to him by Dr. Dawson. Knowledge by the employer "that the person being employed then has employment, and that he is giving it up to engage in his new work under the new contract" is valuable consideration. Alabama Mills, 237 Ala. at 299,186 So. at 702.
The evidence before the trial court in this case established the first two elements of the test for an offer of permanent employment. The defendants' motions for summary judgment did not challenge, and the defendants made no showing questioning the existence of, the third element: whether Dr. Dawson had the authority to bind A M. The summary judgment was erroneous insofar as it disposed of the claim relating to Dawson's offer and, on remand, the question of Dawson's authority is an open issue. See generally Lee v. City of Gadsden, 592 So.2d 1036
(Ala. 1992).
The summary judgment was also incorrectly entered with respect to the issue whether the staff handbook constituted an offer to Matthews of a contract of employment that could be terminated only for cause. Our supreme court has held that an employee handbook or policy manual issued by the employer can create a unilateral contract by which the employer promises not to discharge an employee except pursuant to specified procedures or for specified causes. See Hoffman-La Roche, Inc.v. Campbell, 512 So.2d 725 (Ala. 1987). In Hoffman-La Roche, the court set out the following test to determine whether a handbook creates a contract of employment.
 "[T]o become a binding promise, the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy. . . . Indeed, if the employer does *Page 1278 
not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook. . . .
". . . .
 ". . . First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration."
512 So.2d at 734-35. Whether an employee handbook meets this test is ultimately a question of law to be determined by the court. Id. However, "the facts underlying that legal conclusion may be in dispute, thus requiring resolution by the factfinder." Lassiter v. Covington, 861 F.2d 680, 684 (11th Cir. 1988).
The second and third prongs of the Hoffman-La Roche test are not at issue in this case. It is undisputed that Matthews received the handbook and that he continued to work for A M. The only issue is whether the language of the handbook constituted an offer of employment.
" 'Whether the language in the handbook was intended to be an offer is determined by reference to the reasonable meaning of the parties' external and objective manifestations, rather than by their uncommunicated beliefs.' " Bell v. South Central Bell,564 So.2d 46, 48 (Ala. 1990) (quoting Mayo v. Andress,373 So.2d 620, 623-24 (Ala. 1979)).
The A M employee handbook states the following with respect to "employment contracts":
"C. EMPLOYMENT CONTRACTS
 "Alabama A M University does not issue formal annual contracts to continuing employees. Such employees are provided a Notice of Continuing Employment. A formal Contract of Employment is issued to new employees only. An employee on continuing employment who has not been given notice of non-reemployment or termination is considered to have ongoing employment."
The handbook defines "permanent" and "temporary" employees as follows:
"XI: EMPLOYMENT STATUS
"A. GENERAL STAFF DESIGNATIONS
 "All general staff personnel are designated as being in either a permanent full-time, permanent part-time, temporary full-time, or temporary part-time status. These terms are defined as follows:
 "a. Permanent — Employment which is constant until ended by action of the employee or the University.
 "b. Temporary — Employment of a specified limited duration which is prescribed by a beginning date and a predetermined separation date. Employment is not to exceed nine (9) consecutive months.
 "c. Full-time — A working schedule of forty (40) hours per workweek."
Based on the definitions in the handbook, the conflicting testimony of Dr. Dawson and Dr. Shuford as to whether Matthews was permanent or temporary, and the inconsistency between the dates of employment listed on the Personnel Requisition Form and the Personnel Action Form submitted to the university personnel department, we conclude that there was a material question of fact concerning whether Matthews was a "permanent" or a "temporary" employee.
Matthews contends that certain provisions of the employee handbook limited A M's right to discharge him without cause. Chapter XVIII of the handbook, relating to "Disciplinary Action," outlines a system of "progressive discipline," ranging from oral warnings, through written warnings, to suspension and termination. The handbook states:
 "Where corrective action is required, a system of 'progressive discipline' consisting of increasingly stronger degrees of disciplinary action, should be followed, as outlined below. The nature or severity of the offense will determine what first step of discipline is necessary."
The chapter on Disciplinary Action further provides: *Page 1279 
 "After other disciplinary measures have failed or when a first time incident occurs that is extremely serious, termination of an employee may be necessary. When this action is taken because of misconduct or continued poor performance, a discussion with the Personnel Office should occur.
 "Employees against whom termination action is taken are to be advised in writing by their supervisors of the reason(s) for such dismissal, the effective date, and their right of appeal."
Under the subheading "Involuntary Termination," Chapter XVIII states:
 "Termination proceedings initiated by the supervisor against an employee must be filed in writing with the Director of Personnel. The written charges will be specific, supported by the factual evidence, [and] approved by the supervising vice president."
The "Right of Appeal" portion of Chapter XVIII states:
 "In all cases of disciplinary action (including dismissal), employees should be informed of the specific reasons for the action and be advised of their right of appeal under the University Grievance Procedure."
Chapter IX of the handbook, concerning "Grievance Procedure," states:
 "When a staff member's grievance concerns termination, demotion or other disciplinary actions, the burden of proof shall rest with the administration; justification for such actions shall be based on just cause"
The foregoing provisions of the handbook appear to require that a terminated employee be given a reason for his dismissal and, by implication, require that an employee may be discharged only "for cause." See Ex parte Graham, 702 So.2d 1215 (Ala. 1997).
The provisions of the employee handbook at issue in Ex parteGraham on the subject of disciplinary action are similar to the provisions of the handbook in this case. In Ex parte Graham, the supreme court held that a provision requiring that a terminated employee must be given "the reason(s) for dismissal" "presupposes the existence of an offense as the basis for discipline and specifically precludes discipline except forthat 'cause.' " Ex parte Graham, 702 So.2d at 1220 (emphasis added).
In apparent contradiction to the "discharge for cause" provisions of the A M handbook, another provision in Chapter XVIII, "Disciplinary Action," of that handbook includes the following statement:
 "The University . . . maintains exclusive dis-cretion to exercise the customary functions of management including, but not limited to: the discretion to select, hire, promote, suspend, dismiss, assign, supervise and discipline employees; to determine the work schedules; to determine the size of and composition of the work force; to establish, change and/or abolish policies, procedures, rules and regulations; to determine and modify job descriptions and job classifications; and to assign duties to employees in accordance with the needs and requirements determined by [A M]."
(Emphasis added.)
In Bailey v. Intergraph Corp., 537 So.2d 21 (Ala. 1988), the Alabama Supreme Court determined that an employee handbook did not meet the first prong of the Hoffman-La Roche test. The court held that because the clear language of one part of the handbook was contradicted by other provisions relating to the same subject matter, and because the employee "produced no evidence that raise[d] a factual dispute with respect to the [contradictions]," the handbook was not "specific enough to constitute an offer." 537 So.2d at 21. See also Stinson v.American Sterilizer Co., 570 So.2d 618, 620-21 (Ala. 1990) (because handbook contained disclaimers or reservations of employer's discretion to deviate from the provisions therein, handbook was not specific enough to give rise to contractual rights and obligations); Bell v. South Cent. Bell,564 So.2d 46, 48 (Ala. 1990) (same).
In this case, the handbook provisions directing that an employee be given a reason for dismissal are arguably contradicted by the provision stating that the university has the "exclusive discretion" to dismiss an employee. Unlike the situation in Bailey v. *Page 1280 Intergraph Corp., however, the evidence in this case "raise[d] a factual dispute with respect to the [contradiction]." A M officials gave Matthews a reason for his dismissal, thereby indicating that they considered themselves bound by the handbook provisions relating to "just cause" for discharging an employee and indicating that they were not relying on the "exclusive discretion" disclaimer.
Based on the foregoing facts and authorities, we hold that the trial court had before it substantial evidence raising questions of material fact as to whether A M had a contract of continuing employment with Matthews. If, on remand, the trier of fact determines that Matthews had an employment contract that extended beyond his termination date and required that he could be terminated only "for cause," then it must necessarily find that A M breached that contract by discharging Matthews for the stated reasons of "reorganization" and "reduction in force." Those reasons were insufficient as a matter of law because A M did not comply with the mandates of the handbook concerning dismissal based on a "reorganization" or a "reduction in force."
 The Due Process Claim
Matthews has no due process claim unless he had a property interest in continued employment with A M. See Board ofRegents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701,33 L.Ed.2d 548 (1972). A public employee enjoys a property interest in his or her employment if the employee has an expectation of continued employment created by legislation, contract, or policy. Id. at 577. The trial court held that Matthews had no contract for — and thus no expectation of — continued employment at A M. It therefore held that no due process rights were violated upon Matthews's termination. Because the trial court ruled incorrectly on the contract issue, it also ruled incorrectly on the due process issue. If, on remand, the trier of fact determines that Matthews had an employment contract, then it must also find that A M denied Matthews due process of law by discharging him without sufficient cause.
 Petition for Writ of Mandamus
The trial court held that Matthews's petition for writ of mandamus was due to be denied because, it determined, whether to renew an employee's one-year contract is a discretionary act and mandamus is not available to compel the performance of a discretionary act. That holding is, of course, correct only if Matthews's contract was, in fact, one for "temporary" employment or for employment extending only to the end of the fiscal year.
 Amendments to the Complaint
We affirm the trial court's order striking Matthews's second and third amendments to the complaint. Those amendments sought to substitute Smith and the Alabama Cooperative Extension System for fictitiously named parties D and E and to state additional claims against the substituted defendants. Fictitiously named parties D and E had been described in the original complaint as persons or entities "who employed [Matthews] on the occasions described in the complaint."
Smith and the Extension System alleged that they had never employed Matthews. Furthermore, they argued, Matthews had stated no cause of action in the original complaint against the fictitiously named parties for whom they were substituted. Matthews did not counter those allegations and arguments in the circuit court and, on appeal, he has provided us with no reason or authority for holding that the trial court erred by striking his amendments. Consequently, we affirm the trial court's order striking the amendments. See Rule 28(a)(5), Ala. R.App.P.
 Sovereign Immunity
Matthews alleged that as a result of A M's breach of contract he suffered loss of income and mental distress for which he was entitled to compensatory damages, including back pay and cost-of-living raises. The trial court held that Matthews's breach of contract action was barred by the doctrine of sovereign immunity. *Page 1281 
The basis for the doctrine of sovereign immunity is found in Article I, § 14, Ala. Const. (1901), which provides "[t]hat the State of Alabama shall not be made a defendant in any court of law or equity."
 "Under Article 1, § 14, Alabama Constitution of 1901, 'the State and its agencies have absolute immunity from suit in any court.' Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989); see also Taylor v. Troy State University, 437 So.2d 472, 474
(Ala. 1983). 'This immunity extends to the state's institutions of higher learning.' Taylor, 437 So.2d at 474; see Breazeale v. Board of Trustees of University of South Alabama, 575 So.2d 1126, 1128
(Ala.Civ.App. 1991). 'State officers and employees, in their official capacities and individually, are also absolutely immune from suit when the action is, in effect, one against the state." Phillips v. Thomas, 555 So.2d at 83; see Taylor v. Troy State University, 437 So.2d at 474."
Williams v. John C. Calhoun Community College, 646 So.2d 1, 2
(Ala. 1994).
 "An action is one against the state when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiff's recovery of money from the state."
Shoals Community College v. Colagross, 674 So.2d 1311, 1314
(Ala.Civ.App. 1995), cert. denied, 674 So.2d 1315 (Ala. 1996).See also Stark v. Troy State University, 514 So.2d 46, 51
(Ala. 1987).
"In determining whether an action against a state officer or employee is, in fact, one against the State, this Court will consider such factors as the nature of the action and the relief sought." Phillips v. Thomas, 555 So.2d at 83. Because Matthews's suit seeks damages, including back pay and cost-of-living raises, for breach of contract, a result favorable to him would directly affect a contract or property right of the state. See Vaughan v. Sibley, 709 So.2d 482
(Ala.Civ.App. 1997); Colagross, supra; Stark v. Troy State Univ., 514 So.2d at 51. Therefore, Matthews's suit for money damages for breach of contract, whether against President Henson individually or against the remaining defendants in their official capacities, comes within the prohibition of § 14. SeeMilton v. Espey, 356 So.2d 1201, 1202 (Ala. 1978).
Because of the sovereign immunity clause, the courts of this state are without jurisdiction to entertain a suit seeking damages, including back pay, for breach of contract against the state. State Bd. of Adjustment v. State Dep't of Mental Health,581 So.2d 481 (Ala.Civ.App. 1991), rev'd on other grounds, Exparte Dale, 581 So.2d 479 (Ala. 1990). Matthews's remedy, if any, is with the Board of Adjustment. Sections 41-9-62(a)(4) and (a)(7), Code of Alabama 1975, provide:
 "(a) The Board of Adjustment shall have the power and jurisdiction and it shall be its duty to hear and consider:
". . . .
 "(4) All claims against the State of Alabama or any of its agencies, commissions, boards, institutions or departments arising out of any contract, express or implied, to which the State of Alabama or any of its agencies, commissions, boards, institutions or departments are parties, where there is claimed a legal or moral obligation resting on the state;
". . . .
 "(7) All claims for underpayment by the State of Alabama or any of its agencies, commissions, boards, institutions or departments to parties having dealings with the State of Alabama or any of its agencies, commissions, boards, institutions or departments. . . ."
(Emphasis added.) The Board of Adjustment has jurisdiction over claims against the state that are not justiciable in the courts because of the state's constitutional immunity from suit.Lee v. Cunningham, 234 Ala. 639, 641, 176 So. 477 (1937). The Board of Adjustment has exclusive jurisdiction over a contract claim against a state university. Alabama State University v.State Bd. of Adjustment, 541 So.2d 567 (Ala.Civ.App. 1989).
If, on remand, the trier of fact determines that Matthews had a contract for continued employment with A M, and that A M breached the contract, it may not award *Page 1282 
Matthews compensatory damages for mental distress or back pay and cost-of-living raises. It may, however, award him declaratory and injunctive relief, including reinstatement.
To the extent that Matthews's suit seeks to compel State officials to perform their legal duties, it falls within an exception to the prohibition of § 14. A state official is not immune from suit to compel the performance of a legal duty, a suit to enjoin the enforcement of an unconstitutional law, a suit to compel the performance of a ministerial act, or a suit brought under the Declaratory Judgment Act. DeStafney v.University of Alabama, 413 So.2d 391, 393 (Ala. 1981).
"[A] board of education does not have to follow any particular . . . policy. However, once such a policy is adopted by the board, the board is bound to follow it." Breazeale v.Bd. of Trustees of South Alabama, 575 So.2d 1126, 1128
(Ala.Civ.App. 1991). See also Baker v. Oneonta City Bd. of Educ.,519 So.2d 1350 (Ala.Civ.App. 1987); Belcher v. JeffersonCounty Bd. of Educ., 474 So.2d 1063, 1068 (Ala. 1985); WalkerCounty Bd. of Educ. v. Walker County Educ. Ass'n, 431 So.2d 948
(Ala. 1983). "[I]f the individual defendants have not acted toward the plaintiff in accordance with the rules and regulations set by the university, their acts are arbitrary and an action seeking to compel them to perform their legal duties will not be barred by the sovereign immunity clause of the Alabama Constitution of 1901." Stark v. Troy State Univ., 514 So.2d at 50. See also Taylor v. Troy State Univ.,437 So.2d 472, 475 (Ala. 1983).
If, on remand, the factfinder determines that Matthews had a contract right that was breached, then the doctrine of sovereign immunity would not prevent it from declaring that A M failed to follow the policies in the handbook and from granting Matthews injunctive relief.
 The § 1983 Claim
Matthews does not present any arguments relating to, and, therefore, we will not address, his § 1983 claim.
The judgment of the circuit court is affirmed in part and reversed in part, and the cause remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MONROE, J., concurs.
ROBERTSON, P.J., and YATES and THOMPSON, JJ., concur in the result.
[1] In Harrell v. Reynolds Metals Co., 495 So.2d 1381, 1385
(Ala. 1986), the Alabama Supreme Court noted:
 "Our interpretation of 'permanent employment' is different from that term's use in the marketplace, where it means steady or regular employment as opposed to temporary employment."