46 So.3d 6 (2010)
MOBILE COUNTY BOARD OF SCHOOL COMMISSIONERS
v.
Barry LONG.
2080794.
Court of Civil Appeals of Alabama.
March 12, 2010.
*7 Edgar P. Walsh of The Atchison Firm, P.C., Mobile, for appellant.
Daniel L. McCleave of McCleave Denson Shields, L.L.C., Mobile; and Henry H. Caddell of Thiry & Caddell, Mobile, for appellee.
BRYAN, Judge.
The Mobile County Board of School Commissioners ("the Board") appeals from a hearing officer's decision reinstating the employment of Barry Long after the Board dismissed Long pursuant to the Fair Dismissal Act ("the FDA"), § 36-26-100 et seq., Ala.Code 1975. We reverse and remand.
In December 2007, the Board adopted a reduction-in-force policy ("the RIF policy") for the Mobile County public-school system ("the school system"). The RIF policy provides, in pertinent part: "A reduction in force may take place when the board determines that a financial exigency, program change, serious natural disaster or other legitimate business reason requires the reduction of personnel through contract termination and approves acting under this policy." The RIF policy establishes policies and criteria to be followed by the Board if a reduction in force becomes necessary. Shortly after the RIF policy was adopted, the Board decided to implement a reduction in force due to a financial exigency within the school system. *8 The reduction in force was one of several initiatives that the Board undertook to address a lack of financial resources in the school system.
In March 2008, the Board adopted a reduction-in-force protocol ("the RIF protocol") specifying how the reduction in force would be implemented. The RIF protocol indicated that the reduction in force would apply to the school system's "central administration." The central administration contains several "distinct categories," or divisions, including the information technology division. As part of the reduction in force, David Akridge, the executive manager of the information technology division, was instructed to cut a certain amount in employee salaries from his division. Akridge testified that he evaluated the jobs in the information technology division to determine which jobs could be terminated with the least disruption to the division. Akridge then recommended to the superintendent that Long, a programmer in the information technology division, be dismissed along with another employee.
In May 2008, the superintendent of the school system recommended to the Board that Long's employment be terminated pursuant to the reduction in force. Pursuant to § 36-26-103, Ala.Code 1975, the superintendent sent written notice by letter to Long informing him of the proposed dismissal. The letter stated that the proposed dismissal was due to a "[j]ustifiable decrease in jobs in the school system" and "[o]ther [g]ood and [j]ust [c]lause." The letter also stated that "[t]he action is taken under the [RIF] policy." In June 2008, the Board terminated Long's employment. Long contested his dismissal, pursuant to § 36-26-103(b), and a hearing officer was selected to conduct a de novo hearing, pursuant to § 36-26-104(a), Ala.Code 1975. At the hearing, the parties presented oral testimony and documentary evidence. The hearing officer subsequently issued a decision determining that the Board had failed to comply with the RIF policy and the RIF protocol in dismissing Long. The hearing officer concluded that, had the Board properly applied the RIF policy and the RIF protocol, Long's employment would not have been terminated. Accordingly, the hearing officer overturned the Board's dismissal of Long. The Board filed a notice of appeal to this court, and we granted the appeal, pursuant to § 36-26-104(b).

Standard of Review
Section 36-26-104(b) provides the general standard of review in an appeal from a hearing officer's decision under the FDA. In pertinent part, § 36-26-104(b) provides that "[t]he decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article." However, our review of a hearing officer's conclusions of law or application of the law to the facts is de novo. Ex parte Soleyn, 33 So.3d 584, 587 (Ala.2009).
Pursuant to the arbitrary-and-capricious standard of review,
"the reviewing court may not substitute its judgment for that of the hearing officer.... [W]here `reasonable people could differ as to the wisdom of a hearing officer's decision[,] ... the decision is not arbitrary.' ...
"`If the decision-maker has "`examined the relevant data and articulated a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made,"'" its decision is not arbitrary. See Alabama Dep't of Human Res. v. Dye, 921 So.2d [421, 426 *9 (Ala.Civ.App.2005) ] (quoting Prometheus Radio Project v. FCC, 373 F.3d [372, 389 (3d Cir.2004) ] (quoting in turn Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962))).'"
Ex parte Dunn, 962 So.2d 814, 816-17 (Ala.2007) (quoting with approval, but reversing on other grounds, Board of Sch. Comm'rs of Mobile County v. Dunn, 962 So.2d 805, 809, 810 (Ala.Civ.App.2006)).

Discussion

I.
Section 36-26-102, Ala.Code 1975, provides that a nonprobationary employee, like Long, shall not be dismissed
"except for failure to perform his or her duties in a satisfactory manner, incompetency, neglect of duty, insubordination, immorality, justifiable decrease in jobs in the system, or other good and just causes; provided, however, such termination of employment shall not be made for political or personal reasons on the part of any party recommending or voting to approve such termination."
The Board first argues that it established that Long was dismissed on the ground that there was a "justifiable decrease in jobs in the system." The Board cites uncontroverted evidence in the record on appeal indicating that a financial crisis in the school system caused a decrease in jobs. The Board further contends that the record lacks evidence establishing that Long's dismissal was "made for political or personal reasons." Therefore, the Board argues, it established a permissible reason for dismissing Long under § 36-26-102. Accordingly, the Board argues that the hearing officer should have upheld the Board's decision to dismiss Long without considering whether the Board complied with the RIF policy and the RIF protocol in dismissing Long. That is, the Board seems to argue that the application of the RIF policy and the RIF protocol are not relevant to a determination of whether Long was properly dismissed for a "justifiable decrease in jobs in the system."
As noted, the school system's superintendent sent a letter to Long indicating the reasons for the proposed dismissal. The letter stated, in pertinent part:
"The reasons for the proposed termination are as follows:
"1. Justifiable decrease in jobs in the school system.
"2. Other Good and Just Cause.
"The facts showing that the termination is taken for one or more of the reasons listed in Ala.Code[,] § 36-26-102 are as follows:
"The Board ..., at its meeting on May 5, 2008, accepted my recommendation of a reduction-in-force because of budgetary considerations for the 2008-2009 school year which influences your current position. The action is taken under the [RIF] policy...."
Although the superintendent's letter stated that he was recommending that Long be dismissed due to a "[j]ustifiable decrease in jobs in the school system" and "[o]ther [g]ood and [j]ust [c]ause," the letter does not specify the purported "[o]ther [g]ood and [j]ust [c]ause." In its brief, the Board contends that the statutorily prescribed reason it dismissed Long was that there was a justifiable decrease in jobs in the school system, and that contention seems to be supported by the substance of the superintendent's letter. The hearing officer was authorized to determine whether the Board proved the asserted ground for the dismissala justifiable decrease in jobs in the school system. See §§ 36-26-102 and -104(a).
*10 As Long notes, "a board of education is bound to comply with its adopted policies." Belcher v. Jefferson County Bd. of Educ., 474 So.2d 1063, 1068 (Ala.1985); see also Matthews v. Alabama Agric. & Mech. Univ., 716 So.2d 1272, 1282 (Ala. Civ.App.1998) (stating that a board of education is bound to follow its adopted policy). The Board seems to argue, however, that the issue whether the Board complied with the RIF policy and the RIF protocol is not relevant to the issue whether Long was dismissed due to a justifiable decrease in jobs in the system. The superintendent's letter stated that the dismissal was "taken under the [RIF] policy." The Board adopted the RIF policy and the RIF protocol to implement any necessary decrease in jobs in the school system. Having done so, the Board may not now claim that the RIF policy and the RIF protocol are irrelevant to a hearing officer's evaluation of whether an employee was properly dismissed for a "justifiable decrease in jobs in the system" under § 36-26-102. Therefore, the hearing officer properly considered whether the Board complied with its RIF policy and the RIF protocol in dismissing Long.

II.
Alternatively, the Board argues that, even if the hearing officer properly considered the issue whether the Board complied with the RIF policy and the RIF protocol in dismissing Long, the hearing officer erred in determining that the Board failed to comply with the RIF policy and the RIF protocol. The hearing officer determined that the application of the RIF policy and the RIF protocol protected Long, a nonprobationary employee under the FDA, from dismissal in this case. The Board argues that it complied with the RIF policy and the RIF protocol in dismissing Long. To resolve this issue, we must examine the relevant language of the RIF policy and the RIF protocol. The RIF policy states, in pertinent part:
"Prior to the implementation of a reduction in force, the board will determine, upon the recommendation of the Superintendent, the organizational level/areas to be reduced. The board should determine whether organizational levels/areas (i.e., elementary, food service) are to considered distinct categories. The personnel within these levels may be considered separately (i.e., elementary and secondary, physical education, music, etc.)."
In this case, the Board identified the school system's "central administration" as the "organization level" to be reduced in the reduction in force. Long worked in the information technology division of the school system's central administration. The RIF protocol provides:
"7. The Superintendent will determine and recommend to the Board the position functions of each division or department from which cuts will be made.
". . . .
"9. Employees within the same position function within the same division or department may constitute a group for cutting. `Singleton' positions with[in] the same division or department may or may not be cut."
An employee is employed in a "singleton" position if he or she is the only employee employed in that position. Long was employed in a singleton position because he was the only employee in the information technology division who held the position of "programmer." The superintendent identified Long's programmer position as a position to be cut in the reduction in force.
The RIF protocol further provides:
"10. If there are multiple probationary or non-tenured employees occupying *11 the position function within the same division or department, then the applicable criteria identified in [the RIF policy] will be used to determine who will be retained.
"11. If all employees within the same position function identified for [reduction in force] are either tenured or nonprobationary, then the applicable criteria identified in [the RIF policy] will be used to determine who will be retained."
Based on the above-quoted provisions, the Board argues that the RIF policy and the RIF protocol establish a procedure that requires the Board to: (1) identify the organizational levels or areas subject to a reduction in force; (2) identify the specific positions subject to a reduction in force; and (3) "examine the rights of the individuals employed in those particular positions... to determine which individuals serving in those positions will be [dismissed]." The Board's reply brief at 17. The Board argues that, because Long was the only employee who held the position of programmer, once that position was identified as a position to be cut, the Board could simply dismiss Long without regard to any other criteria. That is, the Board contends that Long, as the only programmer, constituted a class of one for purposes of a reduction in force.
However, the RIF policy also establishes the following general policies:
"Unless there are no qualified tenured or non-probationary employees for a particular position, non-tenured and probationary employees will be reassigned or terminated before any tenured or nonprobationary employee.
". . . .
"Probationary employees will be reassigned or terminated prior to non-probationary employers except as follows. Probationary employees will be retained when a non-probationary employee is terminated only if the non-probationary employee is not qualified by experience and/or education to occupy the position the probationary employee occupies."
Paragraph 13 of the RIF protocol provides:
"13. Notwithstanding which division, department or position function an employee is employed in, if said employee is tenured or non-probationary and is legally qualified to fill a position function in another division, he/she shall be entitled to that position if filled by a non-tenured or probationary employee."[1]
Read together, those provisions indicate that the Board cannot dismiss a nonprobationary *12 employee, such as Long, if there is another position within the central administration (1) that is held by a probationary employee and (2) that the nonprobationary employee is qualified to hold. In such a case, the nonprobationary employee must be retained in place of the probationary employee. Indeed, the Board concedes that, if paragraph 13 of the RIF protocol is applicable, the school system "would have had to find another position for nonprobationary employees who were identified for the Reduction-in-Force" and who were legally qualified to fill a position held by a probationary employee. The Board's brief at 35.[2]
The hearing officer determined that the Board failed to comply with the RIF policy and the RIF protocol by dismissing Long while retaining Patrick Byrne, who was employed as a probationary "programmer/analyst" in the information technology division at the time of Long's dismissal.[3] Pursuant to the RIF policy and the RIF protocol, whether the hearing officer's determination is correct depends on whether Long is qualified to hold Byrne's position of programmer/analyst. Long's position of programmer is distinct from Byrne's position of programmer/analyst. Akridge, the executive manager of the information technology division, testified regarding the position of programmer/analyst:
"[A] programmer/analyst not only programs, but they also do analyst work in that [ ] they go into a particular situation that they're asked to develop software for. The [programmer/]analyst goes into that situation, learns that person's job. Because you can't write a piece of software without knowing what that person's job is and how they perform their job.
"After taking time to do that, the [programmer/]analyst then moves to a portion of design phase. They take their knowledge of learning the job, they design that piece of software and flowcharts and paper. Then they move to the next step of actually coding that particular piece of software to the computer. They write the lines of code and magically develop that software.
"After it's done, they test it. And then that particular person administers that software and follows up with any of the testing and maintains the manuals and things that need to go along with that. It encompasses every step.... That's the plan, the birth, and the development of an entire piece of software.
"[The work of] a programmer/analyst [has] to encompass all of the fields [and] be[ ] able to handle all of those major areas."
Akridge testified that a programmer assists a programmer/analyst. Akridge testified about the difference between a programmer, like Long, and a programmer/analyst, like Byrne: "Programming encompasses that one particular step [of] magically making that software happen. [Programming does not encompass] the aspect of analyzing, problem solving, developing... the flowchart, doing the testing of the software. That is the difference between ... a programmer/analyst and a programmer."
The school system's job description of the programmer/analyst position lists the qualifications of that position: "Bachelor's degree in Computer Science, Engineering, *13 or Business[;] aptitude in accounting[;] analytical ability[;] and effective dealing with personnel. Sufficient work related experience may be considered in lieu of college training." Long does not have a degree in computer science, engineering, or business. Because Long does not have a bachelor's degree in those disciplines, he does not meet a basic requirement for the position of programmer/analyst. However, the job description for that position states that "[s]ufficient work related experience may be considered in lieu of college training." The hearing officer found that Long's work experience was sufficient to satisfy the educational requirement for the position of programmer/analyst. In his decision, the hearing officer stated: "[Long] has 30 years of `sufficient work related experience' such as to satisfy educational qualifications for the Job Description for 'Programmer/Analyst.' ... And, his 30 years of experience surpasses all others in the [information technology] department." Evidence in the record indicates that Long has worked for the school system as a programmer since 1979. Therefore, the record supports a finding that Long's work experience in the computer-science field was sufficient to be considered in lieu of a degree in computer science. Accordingly, the hearing officer did not act arbitrarily or capriciously in finding that Long's extensive experience as a programmer compensated for his not having a bachelor's degree in computer science, engineering, or business.
However, the job description for the programmer/analyst position also lists "aptitude in accounting, analytical ability, and effective dealing with personnel" as qualifications for that position. The hearing officer found that Long is qualified to be a programmer/analyst based on his 30 years of experience in the school system. However, in his decision, the hearing officer made no reference to the other qualifications for a programmer/analyst. It appears that the only reference in the record to "aptitude in accounting" came during Akridge's testimony. Akridge opined that Long lacked the aptitude in accounting to be qualified for the programmer/analyst position. Akridge also opined that Long lacked the analytical ability to be a programmer/analyst and that if Long were "to apply for [the programmer/analyst] job today, he would not be qualified."
Long testified generally that he believes he is qualified to be a programmer/analyst. However, although Long described certain aspects of his job tending to indicate his analytical ability, he did not testify regarding his aptitude in accounting. "Aptitude in accounting" is a qualification for the programmer/analyst position, and the only evidence in the record regarding this qualification appears to be Akridge's testimony that Long lacks this qualification. Long failed to rebut the Board's evidence indicating that he is not qualified to hold the position of programmer/analyst. Long did not present evidence establishing that he meets each qualification to perform Byrne's job. Therefore, we must conclude that the record does not support the hearing officer's finding that Long is qualified to be a programmer/analyst. Accordingly, contrary to the hearing officer's determination, the Board, acting pursuant to the RIF policy and the RIF protocol, was not obligated to retain Long, a nonprobationary programmer, in place of Byrne, a probationary programmer/analyst.[4]

*14 Conclusion

The hearing officer did not err in considering whether the Board complied with the RIF policy and the RIF protocol in dismissing Long as part of a justifiable decrease in jobs in the school system. However, contrary to the hearing officer's determination, the record indicates that the Board complied with the RIF policy and the RIF protocol in dismissing Long. Therefore, we reverse the decision of the hearing officer overturning the Board's dismissal of Long, and we remand the case to the hearing officer for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., dissents, with writing.
MOORE, Judge, dissenting.
I respectfully dissent from the main opinion because I cannot agree that the hearing officer acted arbitrarily and capriciously in determining that Barry Long is qualified to hold the position of programmer/analyst. Based on the testimony from both Long and Connie Rozier that Long could perform the work of a programmer/analyst with training, the hearing officer could have determined that Long had the aptitude[5] in accounting listed as a qualification for that position. Because the evidence was sufficient to support a finding that Long was qualified for the position of programmer/analyst, the hearing officer correctly concluded that the Mobile County Board of School Commissioners failed to comply with the reduction-in-force policy by terminating Long's employment.
Based on our standard of review, I conclude that we are bound to affirm the hearing officer's decision. Because the majority of the court disagrees, I respectfully dissent.
NOTES
[1] The Board contends that paragraph 13 was not included in the final version of the RIF protocol adopted by the Board. During the hearing before the hearing officer, the Board and Long each submitted a copy of the RIF protocol including paragraph 13, but neither party submitted a copy of a protocol that did not include paragraph 13. A few weeks after the hearing, the Board moved the hearing officer to amend the record made before the hearing officer to include "the final version" of the RIF protocol; that "final version" did not include paragraph 13. The Board's motion was supported by the superintendent's affidavit, which stated that the version of the RIF protocol submitted at the hearing was not the final version of that document. Long filed a motion to strike the proffered amendment and the affidavit, which the hearing officer granted. Therefore, the only version of the RIF protocol that was before the hearing officer was the version containing paragraph 13. The Board does not argue that the hearing officer erred by not permitting the record made before the hearing officer to be amended; therefore, we do not address that issue. We conclude that our review is limited to the version of the RIF protocol that was submitted at the hearing and that was considered by the hearing officer, i.e., the version containing paragraph 13.
[2] Of course, the Board argues that paragraph 13 was not included in the final version of the RIF protocol. However, the version of the RIF protocol containing paragraph 13 is the version before us on review. See supra note 1.
[3] Byrne attained nonprobationary status following Long's dismissal.
[4] We note also that, when asked whether he could learn how to perform Byrne's job, Long testified: "Probably. I don't know. With possible training I could do his job.... [P]ossibly not. Maybe with a lot of training I could." Connie Rozier, a programmer/analyst who worked closely with Long, testified that Long would be able to perform the work of a programmer/analyst with "a lot of training."
[5] Definitions for "aptitude" include "capacity for learning" and "general suitability." See Merriam-Webster's Collegiate Dictionary 62 (11th ed.2003).