**Carolyn NICHOLSON, Plaintiff,**

v.

**Ben MOATES, et al., Defendants.**

No. CIV. A. 00–A–861–S.

United States District Court,
M.D. Alabama,
Southern Division.

Feb. 8, 2001.

pacity, Claude R. Ñicholson, Jack Herbert, Deputy Sheriff of Coffee County, Alabama, sued in his individual capacity, Henry Petty, Deputy Sheriff of Coffee County, Alabama, sued in his official capacity, Myron Williams, Chief Deputy Sheriff of Coffee County, Alabama, sued in his individual capacity, Robert Caswell, Police Officer of the City of Enterprise, Alabama, sued in his individual capacity, defendants.

Daniel L. Feinstein, Chambless, Math, Moore, Brown & Carr, P.C., Montgomery, for Carolyn Nicholson, plaintiffs.

Daryl L. Masters, Kelly G. Davidson, Webb & Eley, P.C., Montgomery, Ben Moates, Coffee County Sheriff, New Brockton, Jackson W. Stokes, Stokes & Morrow, Robert Caswell, [PRO SE], c/o Elba Police Dept., Elba, for Ben Moates, Sheriff of Coffee County, Alabama, sued in his official and individual capacities, Rex Killingsworth, Deputy Sheriff of Coffee County, Alabama, sued in his official ca-

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on a Motion for Partial Dismissal of Plaintiff's Second Amended Complaint (doc. # 37) filed by Defendants Ben Moates, Rex Killingsworth, Jack Herbert, Henry Petty, and Myron Williams (collectively, "County Defendants") on December 20, 2000.

Plaintiff Carolyn Nicholson ("Plaintiff") originally filed her Complaint against Defendant Claude Nicholson, Defendant Robert Caswell ("Caswell"), and the County Defendants on June 30, 2000. In the First Amended Complaint, she brought claims for violation of the Fourth and Fourteenth Amendments to the United States Constitution (Count I), for violation of the Equal Protection Clause of the United States Constitution (Count II), for conversion (Count III), and assault and battery (Count IV). Defendants, subsequently, filed Motions to Dismiss which the court granted in part and denied in part. The court dismissed Plaintiff's equal protection claim, procedural due process claim, and conversion claim as to the County Defendants. As a result, the case could proceed against the County Defendants on the Fourth Amendment claim, against Caswell on the Fourth Amendment claim and the conversion claim, and against Claude Ni-

cholson on the Fourth Amendment claim, the conversion claim, and the assault and battery claim.

In its order addressing the Motions to Dismiss, the court also granted Plaintiff time to file an amendment which repleads the procedural due process claim. Subsequently, Plaintiff filed a Second Amended Complaint.[1] The County Defendants in turn filed this Motion for Partial Dismissal, seeking dismissal of the procedural due process claim.

## II. *MOTION TO DISMISS STANDARD*

█ A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.1985).

## III. *FACTS*

The allegations of the Plaintiff's Second Amended Complaint are as follows:

Plaintiff was, at the time relevant to the facts of this case, married to Defendant Claude Nicholson. Defendant Ben Moates ("Moates") is the Sheriff of Coffee County, Alabama and has been sued in his individual capacity. Defendant Rex Killingsworth ("Killingsworth"), Defendant Jack Herbert ("Herbert"), Defendant Henry Petty ("Petty"), and Defendant Myron Williams ("Williams") are Deputy Sheriffs of Coffee County, Alabama who have been sued in their individual capacities.

Plaintiff alleges that during her marriage to Claude Nicholson she sought intervention from law enforcement officials to provide physical protection from abuse or threats of abuse by Claude Nicholson. According to Plaintiff, she filed a Petition for Protection from Abuse in the Circuit Court of Coffee County, Alabama, and an order was issued excluding Claude Nicholson from Plaintiff's residence, enjoining him from communicating with Plaintiff, and awarding temporary possession of a 1995 Oldsmobile Aurora to Plaintiff. Second Amended Complaint at ¶ 15.

Plaintiff further alleges that on or about October 20, 1997, Claude Nicholson and an unnamed female claiming to be Plaintiff appeared in state circuit court and filed a motion to obtain certain personal property of the Plaintiff, with the express or implied representation that Plaintiff consented to an ex parte order granting Claude Nicholson leave to obtain the property. *Id.* at

---

**1.** The Second Amended Complaint and First Amended Complaint allege in Count I a claim for "unlawful seizure" based on alleged violations of the Fourth and Fourteenth Amendments. In its Memorandum Opinion and Order of November 17, 2000, the court construed Count I's Fourteenth Amendment Claim for an unlawful seizure to be a claim for a procedural due process violation. Count II in the Second Amended Complaint also alleges a procedural due process violation. Accordingly, when the court refers to Plaintiff's procedural due process claim the court is referring to both Count II and the portion of Count I that alleges a procedural due process claim.

¶ 16. Plaintiff subsequently filed a motion in state court asking for the October order awarding Claude Nicholson certain personal property to be set aside, which was granted in November of 1997. In October of 1997, Claude Nicholson also filed a Divorce Petition in the Circuit Court of Coffee County, Alabama.

Plaintiff states that in June of 1998, Claude Nicholson filed a motion requesting to obtain the personal property which had been granted to him in the order which was set aside in November. *Id.* at ¶ 23. On June 23, 1998, a state circuit court judge entered an order which states that "Claude Nicholson is allowed to enter the marital residence and recover specified items of personalty .... [Defendant Nicholson's] attorney is to contact [Plaintiff's] attorney and determine a date within the next five calendar days when this order may be executed." *Id.* at ¶ 25. Plaintiff states that she had no notice of this hearing and was not given an opportunity to be heard. *Id.*

On July 2, 1998, Claude Nicholson entered Plaintiff's premises and removed personal property of Plaintiff, including a 1995 Oldsmobile, furniture, and a personal computer. *Id.* at ¶ 27. Plaintiff alleges that Moates knew of Claude Nicholson's intended conduct, and that he dispatched Killingsworth, Herbert, Williams, and Petty to Plaintiff's residence with instructions to effectuate the removal of the personal property. *Id.* at ¶ 28. Plaintiff further alleges that the June 23, 1997 order by the state circuit court upon which the Defendants relied had been altered by one or more of the Defendants.

Plaintiff states that she refused to allow the Defendants into her residence and called Coffee County Constable Michael Nowicki ("Nowicki") and two of Plaintiff's co-workers who then came to the residence. Plaintiff alleges that when Nowicki came into the residence, Killingsworth forcibly entered the premises by pulling the door from Nowicki and pushing Nowicki aside. *Id.* at ¶ 29. Plaintiff further states that Killingsworth allowed Claude Nicholson to enter the residence, followed by Herbert, Williams, and Petty. According to the Plaintiff, these Defendants threatened, harassed and attempted to intimidate Plaintiff and her friends, and Killingsworth physically removed her friends from the residence. *Id.* at ¶ 30. Plaintiff alleges that Killingsworth, Petty, and Claude Nicholson remained on the premises for approximately three and a half hours removing personalty, ransacking personal belongings, and rummaging through legal papers in violation of her constitutional rights.

## IV. *DISCUSSION*

■ As stated above, the County Defendants have filed a Motion for Partial Dismissal of Plaintiff's Second Amended Complaint, seeking dismissal of Plaintiff's procedural due process claim. To succeed on a procedural due process claim, as sought under section 1983, a plaintiff must establish: "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson County v. Cherry,* 980 F.2d 1354, 1357 (11th Cir.1992). The County Defendants assert that Plaintiff has failed to allege the third prong—the constitutional inadequacy of procedures accompanying the deprivation.[2] *Tinney v.*

---

**2.** Plaintiff, relying on *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), argues that the availability of a post-deprivation hearing after the loss of personalty is insufficient to withstand due process scrutiny. The decision in *Fuentes,* however,

*Shores,* 77 F.3d 378, 382 (11th Cir.1996) (holding in a section 1983 action that plaintiffs failed to state a valid procedural due process claim because they did not allege that Alabama law provided them with an inadequate post-deprivation remedy).

In her Seconded Amended Complaint, Plaintiff alleges that the County Defendants deprived her of procedural due process by unlawfully seizing her personal property. As to the adequacy of the state post-deprivation procedures, Plaintiff alleges that:

> Plaintiff has attempted to avail herself of any and all state law avenues for relief; however, said post-deprivation remedies have proven to be wholly inadequate. Specifically, despite state court order or orders to the contrary, the wrongfully seized property, including the vehicle, has not been returned to Plaintiff. Further, upon information and belief, one or more of the Defendants have taken affirmative steps to prevent Plaintiff's recovery of her property and have damaged same.

Seconded Amended Complaint at ¶ 46. Although the court must take all the factual allegations in the complaint as true for the purposes of this motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Plaintiff's allegation that the state post-deprivation remedies are wholly inadequate is just such an allegation. *Id.* (holding that the court is not bound to credit and may disregard petitioners' allegation that they have

been denied a minimally adequate education). The court does have to credit Plaintiff's factual allegations that support her assertion, such as her allegation that despite court order(s), Plaintiff has not received her property back. *Gregory v. Shelby County, Tennessee,* 220 F.3d 433, 446 (6th Cir.2000) ("[W]e accept all of plaintiff's factual allegations as true, but we need not accept as true legal conclusions or unwarranted factual inferences.") (citations omitted); *Breyer v. Meissner,* 214 F.3d 416, 421 (3d Cir.2000) ("In reviewing a motion to dismiss, we allow the non-movant the benefit of all reasonable inferences drawn from the allegations contained in the complaint, and we accept these allegations as true. However, we are not required to accept legal conclusions alleged or inferred in the complaint.") (citations omitted).

The County Defendants assert that Alabama does have adequate post-deprivation remedies and that Plaintiff's allegations that she has not received her property back is insufficient to state a claim that those post-deprivation remedies are inadequate. To be adequate, a state post-deprivation hearing "must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." *Cotton v. Jackson,* 216 F.3d 1328, 1331 (11th Cir.2000). "[T]he state's remedial procedure need not provide all relief available under section 1983; as long as the remedy 'could have fully compensated the [employee] for the property loss he suffered,' the remedy satisfies procedural due process." *McKinney v. Pate,* 20 F.3d

---

is distinguishable from the case at hand. In *Fuentes,* the Supreme Court held unconstitutional Florida and Pennsylvania laws that authorized the seizure of goods or chattels in a person's possession under a writ of replevin where both statutes provided for the issuance of writs ordering state agents to seize a person's possessions, simply upon the ex parte

application of any other person who claims a right to them and posts a security bond. *Id.* at 69–70. This case, however, does not concern the constitutionality of Alabama's attachment laws. Instead, this case deals with the issue of whether a remedy exists when a sheriff unlawfully seizes property.

1550, 1564 (11th Cir.1994) (en banc) (quoting *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

The County Defendants contend that a suit for wrongful attachment provides an adequate remedy. *Joseph v. Henderson*, 95 Ala. 213, 10 So. 843, 844 (1892) ("A creditor who causes an attachment to be wrongfully levied upon property is equally guilty of a trespass as the officer who makes the levy.").[3] The court has recognized that "Alabama has long held a sheriff individually accountable for levying on property in an unauthorized manner." *Williams v. Goldsmith*, 905 F.Supp. 996, 1002 (M.D.Ala.1995). For instance, the Alabama Supreme Court has stated that a "sheriff cannot make a valid levy on real or personal property, or by garnishment, without having in his possession the attachment authorizing it. His power and duty arise when the attachment is placed in his hands. Until then he has no authority to act, and becomes a trespasser if he seizes the property of the defendant." *Donald v. Nelson*, 95 Ala. 111, 10 So. 317, 318 (1891); *see also Pickett v. Richardson*, 223 Ala. 683, 138 So. 274, 277 (1936) (noting that "if the officer knew before the sale that the property was that of plaintiff and not of defendant in attachment and judgment, and, being so informed, sold it against due objection, the officer and sureties were held liable") (citing *Burgin v. Raplee*, 100 Ala. 433, 14 So. 205 (1893)); *J.H. Walker & Co. v. Norris*, 10 Ala.App. 515, 63 So. 935, 936 (1913) (noting that "[i]t is well settled that the officer levying a valid writ of attachment is liable as a trespasser where he seizes thereunder the goods of a person not named in the writ"); *Wolf v. Shepherd*, 103 Ala. 241, 15 So. 519, 519 (1894) (holding that a plaintiff may maintain trover against the sheriff who with notice of the plaintiff's rights takes the goods from the plaintiff's carrier and coverts them, under attachment against the purchaser). This state law action would cover Plaintiff's allegations that the County Defendants unlawfully seized the Plaintiff's personal property and would provide Plaintiff with an adequate procedure to recover appropriate damages.

Moreover, Plaintiff recognizes that Alabama permits such a suit, for in its Complaint Plaintiff cites the *Williams* decision to support its contention that the County Defendants violated clearly established Alabama law—that a sheriff is individually accountable for levying on property in an unauthorized manner. Second Amended Complaint at ¶ 45. Therefore, Alabama has a state procedure that provides Plaintiff with an adequate process to recover damages to her property caused by a sheriff who levies property in an unauthorized manner.[4]

 Plaintiff counters by arguing that this state procedure is inadequate in this case because law enforcement officials have altered and ignored orders of a court of competent jurisdiction that has awarded the seized property to Plaintiff and thus,

---

**3.** The County Defendants also argue that the following two state law remedies are adequate: right of action for injunctive relief pursuant to Ala.Code. § 6–6–5001, and a claim before the State Board of Adjustment pursuant to Ala.Code § 41–9–60. The court need not address these possible remedies, because the court finds that a suit for wrongful attachment is an adequate state law remedy.

**4.** Plaintiff contends that the cases and code provisions cited by the County Defendants provide no illustration of a plaintiff compensated for the wrongs committed by similarly situated defendants. Plaintiff's argument lacks any merit. As the aforementioned cases clearly establish, Alabama law permits a plaintiff to recover against a sheriff for levying on property in an unauthorized manner.

Plaintiff has not received her property.[5] Even assuming that there exists no other adequate remedy in law to ensure the enforcement of such court orders, Plaintiff would be entitled to seek a writ of mandamus.[6] Under Alabama law, one seeking a writ of mandamus must show: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." *Ex parte Edgar*, 543 So.2d 682, 684 (Ala.1989); *see also Ex parte Hudson*, 562 So.2d 248, 250 (Ala.1990). Alabama courts will issue a writ of mandamus to require a public official to do a ministerial act that the official is legally bound to perform. *Taylor v. Troy State Univ.*, 437 So.2d 472, 474–75 (Ala.1983). Enforcing a court order is such a ministerial act that an official is legally bound to perform. *Schneider v. Mobile Bd. of School Com'rs*, 378 So.2d 1119, 1122 (Ala.Civ.App.1979) ("Mandamus is an appropriate remedy to enforce compliance with a judicial decree") (citing *Shirey v. City Bd. of Educ. of Fort Payne*, 266 Ala. 185, 94 So.2d 758 (1957)). Accordingly, Plaintiff would be entitled to a writ of mandamus to compel the law enforcement officers to enforce the court order. Therefore, adequate state law remedies exist to remedy any alleged procedural deprivations. *Cotton*, 216 F.3d at 1333 (holding that a writ of mandamus constitutes an adequate state law remedy to correct alleged procedural deprivations).

## V. CONCLUSION

For the reasons discussed, the Motion for Partial Dismissal of Plaintiff's Second Amended Complaint filed by the County Defendants (doc. # 37) is due to be GRANTED. Accordingly, it is hereby

ORDERED that the County Defendants' Motion for Partial Dismissal of Plaintiff's Second Amended Complaint (doc. # 37) is GRANTED. The procedural due process claims are DISMISSED.

The case will proceed against Defendants Moates, Killingsworth, Herbert, Petty, and Williams on the Fourth Amendment claim, against Defendant Robert Caswell on the Fourth Amendment claim and the conversion claim, and against Defendant Claude Nicholson on the Fourth Amendment claim, the conversion claim, and the assault and battery claim.

---

5. Plaintiff asserts that the Eleventh Circuit has held that a remedy is inadequate if pursuit of such a remedy would be futile. The cases cited by Plaintiff do not support such an exception, and the court has serious doubts that the Eleventh Circuit has recognized a futility exception. *Cf. Rittenhouse v. DeKalb County*, 764 F.2d 1451, 1459 (11th Cir.1985) ("[T]he sovereign immunity enjoyed by [the county and the government official] [does] not render appellant's state law remedy inadequate under *Parratt*."). Even assuming that a futility exception exists, Plaintiff does not allege that she did not pursue the state remedies because they were futile. Instead, Plaintiff alleges that she used the state remedies and that those remedies are inadequate because law enforcement officers have altered and ignored the court order(s) granted in her favor. Thus, the court will not address whether the state law remedies were futile to pursue.

6. The court notes that Plaintiff could seek to hold those law enforcement officers in contempt of court.